**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-1248-MMH-PDB |
| | ) | |
| ROBERT SCHOENFELD, a distributee of | ) | |
| the Estate of Steven Schoenfeld, | ) | |
|     Defendant. | ) | |
| _____ | ) | |

**DEFENDANT ROBERT SCHOENFELD'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AS TO PENALTIES**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendant, Robert Schoenfeld, as a distributee of the Estate of Steven Schoenfeld ("Defendant"), by and through his undersigned counsel, hereby moves for partial summary judgment against Plaintiff, United States of America ("Plaintiff"), with regard to the Plaintiff's claim for penalties under 31 U.S.C. § 5321 in excess of $100,000. There is no genuine issue of material fact relevant to this Motion for Partial Summary Judgment, and the Defendant is entitled to judgment as a matter of law.

**PROCEDURAL BACKGROUND**

1.     On September 29, 2016, the United States filed a Complaint against Steven Schoenfeld. On December 14, 2016, the United States amended the Complaint to include Robert Schoenfeld as a party-defendant. Defendant, Robert Schoenfeld, filed a Motion to Dismiss (or in the Alternative for Summary Judgment) (the "Motion to Dismiss") on January 5, 2017.

2.     Subsequent to the hearing on the Motion to Dismiss held on September 22, 2017, the Court denied Defendant's Motion to Dismiss without prejudice.

3.      Defendant filed a Second Motion to Dismiss, and on September 25, 2018, the Court granted in part and denied in part Defendant's Second Motion to Dismiss.  On October 12, 2018, Defendant filed his Answer and Affirmative Defenses (the "Answer").

## UNDISPUTED MATERIAL FACTS

4.      Steven Schoenfeld died in 2015.  Amd. Complaint, ¶ 7; Answer, ¶ 7.

5.      At his death, and at all times material to the Amended Complaint, Steven Schoenfeld was a citizen of the United States.  Amd. Complaint, ¶ 9; Answer, ¶ 9.

6.      From approximately 1993 to 2010, Steven Schoenfeld had a financial interest in a foreign financial account.  Amd. Complaint, ¶ 10; Answer, ¶ 10.  Between January 1, 2008, and June 30, 2009, the foreign account's monthly balance remained above $10,000.  The account held a balance of $1,228,600 as of June 30, 2009.  Amd. Complaint, ¶ 20; Answer, ¶ 20.

7.      Every resident or citizen of the United States who has "a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" must report such relationship to the Department of the Treasury annually.  31 C.F.R. § 1010.350(a); 31 U.S.C. § 5314(a).  Amd. Complaint, ¶ 4; Answer, ¶ 4.  A person must file a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR."  31 C.F.R. § 1010.350(a).  At the time of the violation alleged in the Amended Complaint, an FBAR was due by June 30th.  31 C.F.R. § 1010.306(c).  Amd. Complaint, ¶ 5; Answer, ¶ 5.

8.      Any person who fails to report his or her interest in a foreign account may be subject to a civil penalty assessed by the Department of the Treasury.  Amd. Complaint, ¶ 6; Answer, ¶ 6. Specifically, "[t]he Secretary of the Treasury *may impose* a civil penalty on any person who violates, or causes any violation of, any provision" of 31 U.S.C. § 5314, the FBAR reporting statute.  31 U.S.C. § 5321(a)(5)(A) (emphasis added).

2

9.      Under § 5321(a)(5), implemented through the Department of Treasury's (the "Treasury") regulations, the maximum penalty that the Treasury "*may impose*…on any person" for a *willful* violation of § 5314 is the greater of $100,000 or 50% of the balance of the foreign financial account at the time of the violation.  <u>See</u> 31 U.S.C. § 5321(a)(5)(A) (the Treasury "may impose" penalties) (emphasis added); 31 U.S.C. § 5321(a)(5)(C)(i) (maximum penalties Secretary "may impose" for willful violation); 31 U.S.C. § 5321(a)(5)(D)(ii) (balance of account).

10.     The corresponding regulations provide that "[f]or any willful [FBAR reporing violation], the Secretary ***may assess*** upon any person, a civil penalty…***not to exceed $100,000***."  <u>See</u> 31 C.F.R. § 1010.820(g) (willful violation); 31 U.S.C. § 1010.820(g)(2) (maximum penalty not to exceed $100,000) (emphasis added).

11.     On September 30, 2014, the Internal Revenue Service assessed a civil penalty against Steven Schoenfeld pursuant to § 5321(a)(5) for allegedly willfully failing to file an FBAR for calendar year 2008.  Amd. Complaint, ¶ 24; Answer, ¶ 24.  The assessed penalty was $614,300, 50% of the account balance ($1,228,600) on June 30, 2009.  Amd. Complaint, ¶ 25; Answer, ¶ 25.

## SUMMARY JUDGMENT STANDARD

12.     Pursuant to Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

13.     A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 323 (1986).   "Summary judgment should be rendered if the pleadings…and any affidavits show that…the movant is entitled to judgment as a matter of law."  Id. at 317.

14.     "The moving party meets its burden if it demonstrates an absence of evidence to support the nonmoving party's case."  Id. at 325.  The burden then shifts to the nonmoving party to identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment. Id. at 324.   A moving party is entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which he has the burden of proof.  Id. at 323.

15.     When, as here, "[t]here are no genuine issues of material fact, and the dispute primarily concerns a question of interpreting a statute and applying it to a specific set of facts…the issue [is] properly resolved on a motion for summary judgment."  LTV Steel Co. v. Nw. Engineering & Const., Inc., 41 F.3d 332, 334 (7th Cir. 1994).

### ARGUMENT

16.     The penalties imposed against Steven Schoenfeld in excess of $100,000 were assessed in contravention of the governing regulations.  Pursuant to the IRS's redelegated authority to impose penalties pursuant to the FBAR implementing regulations, the IRS is bound to apply the regulations contained in § 103.57, as amended by § 1010.820.  Defendant is entitled to partial summary judgment as a matter of law, because the IRS' arbitrary and capricious failure to apply such regulations is fatal to Plaintiff's claim for a monetary judgment against the Defendant in excess of $100,000.

**A.   The IRS was delegated limited authority to enforce the Bank Security Act and its corresponding regulations.**

17.     In 1986, Congress significantly amended the Bank Secrecy Act ("BSA"), including § 5321(a)(5)(A) and vested the Treasury with full, discretionary authority to "impose a civil money penalty on any person who violates, or causes any violation of, any provision of § 5314."

18.     In 1987, the Treasury promulgated changes to BSA regulations, including amendment of the penalties portion of § 103.57(g)(2) for "willful" violations of § 5314, pursuant to the Treasury's authority under § 5321(a)(5).  *See* 52 Fed. Reg. 11436 (Apr. 8, 1987).

19.     In 2002, the Treasury expressly delegated to FinCEN the authority to "implement and administer" the BSA, through the "promulgation and amendment of regulations and the assessment of penalties."  Treasury Order 180-01, ¶ 3(a) (Sept. 26, 2002), 67 Fed. Reg. 64697 (Oct. 21, 2002). In delegating such authority to FinCEN, FinCEN was likewise granted the power to redelegate its authority to an agency of the Treasury.  See Treasury Order 180-01, ¶ 9(a).

20.     On April 2, 2003, by means of a "Memorandum of Agreement and Delegation of Authority for FBAR Requirements," FinCEN delegated authority to the IRS, but only "to assess and collect civil penalties under § 5321 and § 103.57."  A copy of the Memorandum of Agreement is attached herewith as **Appendix A**.   FinCEN's grant of authority to the IRS is, therefore, limited.

**B.   31 U.S.C. § 5321(a)(5) is permissive in nature, and the discretionary penalties set forth in the statute are capped by the regulations currently set forth in 31 C.F.R. § 1010.820.**

21.     As noted above, the Treasury and later FinCEN possess the authority to ***implement*** the BSA through the "promulgation and amendment of regulations."   Treasury Order 180-01, ¶ 3(a) (Sept. 26, 2002).   Such "implementing" regulations are critical, because, as the Supreme Court has

long held, the BSA is not a "self-executing" statute.  See California Bankers Ass'n v. Shultz, 416 U.S. 21, 26 (1974).

22.    Pursuant to § 5321(a)(5)(A) (captioned as "Penalty Authorized"), the Treasury "*may impose*," *but is not required to so impose*, "a civil money penalty on any person who violates, or causes the violation of, any provision of § 5314" (emphasis added).  Therefore, the statute is *permissive* and *requires regulatory implementation*.  See also 15 W. 17th St. LLC v. Commissioner of Internal Revenue, 147 T.C. 557, 582 (2016) (noting that a statute's use of the word "may" implies agency discretion, thereby requiring implementing regulations).

23.    Congress' use of the word "may" is significant.  This Court must "give effect, if possible, to every clause and word, so as to avoid rendering any part of the statute meaningless surplusage."  United States v. Menasche, 348 U.S. 528, 538 (1955).  The statute provides that the Treasury "may impose" a penalty, and then provides a permissive ceiling to the penalties for non-willful violations ($10,000) and willful violations ($100,000 or 50% of the account balance).

24.    The IRS historically asserted that "[§ 5321(a)(5)] is self-executing," and "the new penalty ceilings" of § 5321 (as amended) supersede the regulations.  See, e.g., I.R.M. § 4.26.16.4.5.1 (2008).  However, as the Supreme Court held in Shultz, the penalty provisions of the BSA are not "self-executing," but instead require implementing regulations, such as § 103.57.  See Shultz, 416 U.S. at 26.  Indeed, the Supreme Court in Shultz went so far as to state that "we think it important to note that *the [BSA's] civil and criminal penalties attach only upon violation of regulations promulgated by the [Treasury]*; *if the [Treasury] were to do nothing, the [BSA] itself would impose no penalties on anyone*."  Id. (emphasis added).

25.    The Supreme Court's language in Shultz is supported by the *permissive*, rather than *mandatory*, language of § 5321(a)(5)(A) as the statute existed in 1974, when Shultz was decided; as

6

the statute existed in 2009, when Steven Schoenfeld allegedly "willfully" violated § 5314; and as the statute exists to this day.

26.     Under § 5321(a)(5), the Treasury "may impose" penalties for two types of misconduct: nonwillful misconduct, which is governed by § 5321(a)(5)(B), and willful conduct which is governed by § 5321(a)(5)(C).   The penalty asserted for a non-willful FBAR violation "shall not exceed $10,000." 31 U.S.C. § 5321(a)(5)(B)(i).  If the violation is willful, however, the highest amount of a monetary penalty the treasury "***may impose***" is increased from $10,000 under (a)(5)(B)(i) to $100,000 or 50% of the account balance under (a)(5)(C)(i).

27.     Although both (a)(5)(B)(i) and (a)(5)(C)(i) use the word "shall," these provisions must be read in the context of Subsection (a)(5)(A), which *authorizes* but does not *require* the Treasury to impose penalties.  Without Subsection (a)(5)(A), the Treasury would lack the authority to impose *any* penalties under § 5321, and so reading (a)(5)(B)(i) and (a)(5)(C)(i) in isolation disregards the very portion of the statute which empowers the Treasury to impose penalties in the first place.

28.     In (a)(5)(B)(i) "shall" is used to limit the Treasury's discretion to impose a non-willful penalty in excess of $10,000 ("shall not exceed").  In (a)(5)(C)(i) "shall" is used in reference to the increased penalties ceiling for willful violations in relation to the non-willful penalties in (a)(5)(B)(i) ("the maximum penalty in (a)(5)(B)(i) shall be increased").

29.     Both the pre-2004 version and the current version of § 5321(a)(5)(A) specifically grant the Secretary discretion to assess penalties.   "The statutory language is clear, and there is nothing…that suggests that Congress intended to limit the discretion of the Secretary to determine what penalties should be imposed.  Congress' intent and directive ends with the statute."  United States v. Wahdan, 325 F.Supp.3d 1136, 1139 (D. Colo. 2018); see also United States v. Shinday, 2018

WL 6330424, at *3 (C.D. Cal. 2018) (noting that § 5321 permits the Treasury with discretion to impose a civil money penalty on a person who fails to file an FBAR).

30.     "[Section 5321(a)(5)] sets a ceiling for penalties assessable for willful FBAR violations." United States v. Colliot, 2018 WL 2271381, at *2 (W.D. Tex. 2018).  As the Colliot court noted, "§ 5321(a)(5) vests the Treasury with discretion to determine the amount of the penalty to be assessed so long as that penalty does not exceed the ceiling set by § 5321(a)(5)(C)." Id.

31.     The Court of Federal Claims has twice found that the amendment of § 5321(a)(5)(C) superseded the implementing regulations of § 103.57.  See Norman v. United States, 138 Fed. Cl. 189, 195 (Ct. Fed. Cl. 2018); Kimble v. United States, 2018 WL 6816546, *15 (Ct. Fed. Cl. 2018). Even in Norman, however, the court found § 5321(a)(5)(A) to be discretionary.  Norman, 138 Fed. Cl. at 195 (noting that § 5321(a)(5)(A) "gives the Treasury discretion to impose a penalty not just for willful violations, but for any violations").  Although the Norman court found the statute to be permissive, it nevertheless found that the regulations were inconsistent with the legislative intent of the statute as amended.  As we will discuss at greater length below, the Norman court should not have looked to legislative intent, because the language of the statute is unambiguous, and "Congress' intent and directive ends with the statute." Wahdan, 325 F.Supp.3d at 1139.

32.     Recently, the United States District Court, District of Maryland adopted Kimble in the case of United States v. Horowitz, et al., 2019 WL 265107, *2-3 (D. Md. Jan. 19, 2019).  The Horowitz offers no independent analysis of the § 5321(a)(5), and instead merely adopts the language of the Kimble opinion as its own.

1.     As will be discussed in greater length, *infra*, the Norman, Kimble, and Horowitz decisions suffer from the same fatal flaw; the courts read Subsection (a)(5)(C)(i) in isolation, and not within context of Subsection (a)(5)(A), which is the very subsection that *authorizes* but does not

*require* the Treasury to impose penalties.  The Court of Federal Claims found irreconcilable "inconsistency" between § 103.57 and § 5321(a)(5)(C).  In isolation, this inconsistency is understandable.  In context of Subsection (a)(5) as a whole, in which (a)(5)(A) is the only subsection which authorizes the Treasury to impose penalties, the Norman, Kimble, and Horowitz decisions jump to an erroneous conclusion that a permissive statute conflicts with its implementing regulation.

33.     By way of an elementary example, if the speed limit on the interstate has been 65 miles per hour for 20 years, and the legislature one day raises the speed limit to 70 miles per hour, it is not "inconsistent" for an individual to exercise his discretion and to continue driving at 65 miles per hour. The increased speed limit is a discretionary ceiling on the maximum permissible speed, not a mandate that all drivers drive at 70 mile per hour.

34.     In other willful FBAR cases, the Government has attempted to introduce legislative history as persuasive evidence that § 103.57, as amended by § 1010.820 are inconsistent with § 5321(a)(5).  As the courts in Colliot and Wahdan appropriately held, a court reviewing the statutory language of § 5321(a)(5) should not substantively consider its legislative history, because the language of such statute is unambiguous.   The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself.  United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985)).  "In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"  Id. (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).

35.     Further, "literal application of the statute [will not] produce a result demonstrably at odds with the intentions of its drafters."  Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982).  As described in substantial length throughout this Motion, the statute is permissive, not

mandatory.  Therefore, "literal application" of the discretionary phrase "may impose" is consistent, and not "demonstrably at odds with the intentions of [the statute's] drafters."  Id.; see also Ron Pair Enterprises, 489 U.S. at 241.  Therefore, "[t]he plain meaning of legislation should be conclusive." Id.  Any attempt for the Government to introduce legislative history should, as a matter of law, be properly disregarded by this Court.

**C.  Treasury Order 180-01 expressly instructed FinCEN (and by redelegation, the IRS) to apply regulations capping willful FBAR penalties at $100,000 as of 2009 (and to this day).**

36.     In response to the USA Patriot Act of 2001,[1] the Treasury executed Treasury Order 180-01, which reaffirmed the validity of all existing regulations under the BSA, which included § 103.57.  As Treasury Order 180-01 states in Paragraph 8(a), "[a]ll regulations…that were in effect or in use [in 2001], shall continue in effect…until superseded or revised."  The regulations, then codified at § 103.57, therefore, continued to be law, binding both the regulator and the persons who are regulated.  See, e.g., Hammond v. Lenfest, 398 F.2d 705, 715 (2d Cir. 1968).

37.     The American Jobs Creation Act of 2004[2] amended the FBAR penalty provision to increase the permissive statutory maximum civil willful penalty under § 5321(a)(5).  The amended statute continued to provide that the "Secretary of the Treasury may impose a civil money penalty" for violations of § 5314.  The only change to § 5321 was to raise the ceiling on the permissive maximum willful FBAR penalty to $100,000 or 50% of the account balance in (a)(5)(C)(i).

38.     At the time of the amendment to § 5321(a)(5)(C)(i), Treasury did not propose to amend its enforcement regulations to match the new higher permitted statutory penalty, and it has not done so to this day.  Colliot, 2018 WL 2271381, at *2.  Neither has the IRS, as permitted under the

---

[1] Pub. L. No. 107-56, Title III, Subtitle B, Section 361(a)(2), 115 Stat. 272, 329-332 (September 26, 2002).
[2] Pub. L. No. 108-357, Title VIII, Subtitle B, Part I, Section 821, 118 Stat. 1418, 1586 (Oct. 22, 2004).

Memorandum of Agreement, proposed any amendments to the regulations to raise the regulatory cap on maximum willful penalties.

39.     The Treasury once again reaffirmed the validity and importance of the regulations when it reissued Treasury Order 180-01 on July 1, 2014,[3] once again stating, in Paragraph 7(a) that "[a]ll regulations…that were in effect or in use [in 2001], shall continue in effect…until superseded or revised."  Thus, under § 103.57—as it existed in 2009, and § 1010.820, as it exists today—the maximum civil penalty that the IRS may assess for a willful violation of the FBAR requirements remains capped under the implementing and controlling regulations at $100,000.  Id.

**D.   The statutory amendment of 31 U.S.C. § 5321(a)(5) was not a Congressional "mandate" to impose higher penalties on willful FBAR violations than those set forth in 31 C.F.R. § 103.57.**

40.     As noted in Paragraph 24, *supra*, the IRS historically adopted the position that § 5321(a)(5)(C), as amended in 2004, "is self-executing and the new penalty ceilings apply" in derogation of the regulations.  See I.R.M. § 4.26.16.4.5.1 (2008).  The Internal Revenue Manual has subsequently deleted this reference.  See I.R.M. § 4.26.16 (2015).  Nevertheless, as courts have noted, the Internal Revenue Manual is has no actual legal or regulatory effect.  See Marks v. Commissioner, 947 F.2d 983, 986, n.1 (D.C. Cir. 1991) (noting that "the provisions of the [Internal Revenue Manual]…are not codified regulations, and clearly do not have the force and effect of law"); see also Horowitz, 2019 WL 265107 at *3 (noting that the provision of the Manual may offer guidance but "do not have the force of law and are not mandatory or binding for the IRS" or the courts).

41.     As described in much greater length above, § 5321(a)(5) is permissive, as confirmed by the Supreme Court in Shultz and three separate District Courts in the decisions of Colliot, Wahdan,

---

[3] Posted by Treasury at https://www.treasury.gov/about/role-of-treasury/orders-directives/Pages/to180-01.aspx.

and <u>Shinday</u>.   Indeed, even the Court of Federal Claims in <u>Norman</u> observed that § 5321(a)(5) is permissive, insofar the statute "gives the Treasury…discretion to impose a penalty not just for willful violations, but for any violations."   138 Fed. Cl. at 195 (citing to the language in 5321(a)(5)(A) that the Treasury "may impose penalties").

42.     The IRS' position indicated in the Internal Revenue Manual (2008), as adopted by the Court of Federal Claims in <u>Norman</u>, <u>Kimble</u>, and the District of Maryland in <u>Horowitz</u>, demonstrates an improper interpretation of § 5321(a)(5) as "self-executing."   The <u>Norman</u>, <u>Kimble</u>, and <u>Horowitz</u> courts applied an inappropriate statutory construction of § 5321(a)(5) in reaching such conclusion.

43.     It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." <u>Davis v. Michigan Dept. of Treasury</u>, 489 U.S. 803, 809 (1989).   A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 569 (1995), and "fit, if possible, all parts into an harmonious whole," <u>Food & Drug Admin. v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000) (same).   It is also fundamental that a statute must not be read in a "piecemeal" fashion, but instead must be read from top to bottom, from section to subsection, paragraph to subparagraph, giving proper heed to all cross-references.

44.     Section 5321(a)(5)(A) states that the Treasury "***may impose*** a civil penalty" for FBAR violations. Subsection (a)(5)(B)(i) contains the $10,000 general maximum penalty "imposed under Subparagraph (A)" for nonwillful violations.   The penalty ceiling that the Treasury "shall not exceed" in (a)(5)(B)(i) is increased by (a)(5)(C)(i) in the event of a willful violation ("shall be increased").

45.     As the Supreme Court mandated in <u>Brown & Williamson Tobacco</u>, *supra*, the subsections of § 5321(a)(5) should be read as "a harmonious whole."   With this harmony in mind, the statute can be summarized as follows: *The Treasury may impose a civil penalty under its authority in*

*(a)(5)(A) for violations of the FBAR reporting requirement, which if nonwillful, shall not exceed $10,000, and if willful, shall not exceed $100,000 or the greater of 50% of the account balance at the time of the violation.*

46.     Under the seminal Supreme Court case of <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), "deference to statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." <u>Gen. Dynamics Land Sys. v. Cline</u>, 540 U.S. 581, 600 (2004). "Where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" <u>Ron Pair Enterprises, Inc.</u>, 489 U.S. at 241. Importantly, "judges cannot cause a clear text to become ambiguous by ignoring it." <u>Deal v. United States</u>, 508 U.S. 129, 136 (1993). In the present matter § 5321(a)(5) is unambiguous. Under (a)(5)(A), the Treasury ***may impose*** penalties for nonwillful violations under (a)(5)(B)(i) or increased penalties for willful violations under (a)(5)(C)(i). This statutory structure, when read holistically, is clear, and any attempts to read ambiguity into the statute to depart from its discretionary language is error. <u>Deal</u>, 508 U.S. at 136.

47.     In <u>Kimble</u>, the Government claimed that the statute and regulations governing willful FBAR penalties were fundamentally inconsistent, an argument that the Court of Federal Claims erroneously adopted. <u>Kimble</u>, 2018 WL 6816546 at *15 (citing <u>United States v. Larionoff</u>, 431 U.S. 864, 873 (1977) (noting that an agency's regulations "must be consistent with the statute under which they are promulgated"). <u>Kimble</u>, however, is predicate on § 5321 being self-executing, a position that the Supreme Court unequivocally disavowed in <u>Shultz</u>. The <u>Kimble</u> court focused on the word "shall" in (a)(5)(C)(i) (but ignored the "shall" contained in (a)(5)(B)(i)), instead of reading it as part of the "overall statutory scheme" (i.e., as a "penalty authorized" by § 5321(a)(5)(A)). <u>Davis</u>, 489 U.S. at 809 (overall statutory scheme). In doing so, the courts in <u>Kimble</u> and <u>Norman</u> and <u>Horowitz</u>, failed

13

to "fit…all parts into an harmonious whole."  <u>Mandel Brothers</u>, 359 U.S. at 389.  In doing so, the courts wrongly interpreted the statute as being mandatory and self-executing rather than permissive.

48.     The 2004 statutory amendment merely increased the *discretionary* limit of the FinCEN's authority to impose willful and nonwillful penalties under the statute.  See <u>Colliot</u>, 2018 WL 2271381 at *2 (holding that "§ 1010.820 is consistent with § 5321's delegation of discretion to determine the amount of penalties to be assessed"); <u>Wahdan</u>, 325 F.Supp.3d at 1139 (holding that "the statute and the regulation are not inconsistent on their face" and that "compliance with the lower cap set in § 1010.820(g) also complies with § 5321").

49.     Finding the statute and the regulations "inconsistent" is a simplistic, albeit fundamental logical fallacy.  As in the earlier example, simply raising the speed limit does not mandate that an individual must drive at 70 miles per hour.  Such driver may exercise his discretion and continue to drive at 65 miles per hour, without penalty.  Similarly, the willful FBAR violation penalty limit was increased by statute, not as a ***mandate***, but as a ***limit*** on the FinCEN's discretion to impose penalties for willful FBAR violations, as redelegated to the IRS.

**E.  By its own regulations, the Government was limited to assessing and collecting a civil penalty of $100,000 for Steven Schoenfeld's alleged willful failure to file an FBAR.**

50.     The Government is bound by its own regulations.  Within the Amended Complaint, the Government cites to and relies on regulations implementing the relevant statutes, including the regulations addressing § 5314.[4]  However, when the Amended Complaint cites to the provision for willful FBAR violation penalties, the Government cites only § 5321(a)(5)(C)(i).[5]  The Government cannot so easily sweep its own regulation under the rug; nevertheless, the Government has argued in

---

[4] <u>See</u> Amended Complaint, ¶ 4 (citing to § 1010.350(a)); ¶ 5 (citing to § 1010.350(a) and § 1010.306(c)).
[5] <u>See</u> Amended Complaint, ¶ 5, 24.

other FBAR cases that the regulation implementing the penalty for a willful FBAR violation is no longer in force, that the IRS may simply ignore the regulation, and, without regard to such regulations, that the IRS may directly implement the higher statutory "maximum."   See, e.g., Norman, 138 Fed. Cl. at 195; Kimble, 2018 WL 6816546 at *15.

51.     This contention is baseless, as § 5321 is not mandatory and self-executing but is, instead, discretionary and must be implemented by the Treasury through regulations.  See Shultz, 416 U.S. at 26, 64; see also Treasury Order 180-01.  The Treasury implemented such regulations, § 103.57, as amended by § 1010.820, and those regulations remain in force, including the penalty provisions limiting the ceiling on a willful civil penalty for an FBAR violation to $100,000.

52.     Treasury Order 180-01[6] continues to reaffirm the validity of all regulations promulgated pursuant to the BSA to this day, even those regulations promulgated before the 2004 congressional amendment to the BSA.  Colliot, 2018 WL 2271381, at *2.  Therefore, the IRS' delegated authority continues to be "cabined" by those regulations.  Id.

53.     Critically, the amended § 5321(a)(5) by its own terms does not, itself, impose a civil penalty of half the account balance; rather, it authorizes the Treasury (as delegated to FinCEN) to impose a civil penalty (under § 5321(a)(5)(A)) and instructs the Treasury that it cannot "exceed" a certain amount when doing so (under § 5321(a)(5)(B)(i) as incorporated by § 5321(a)(5)(C)(i)).  Under this structure, the Treasury can impose a lesser penalty but "shall not exceed" the maximum authorized penalty, whether for a nonwillful or willful violation.

54.     The IRS is bound by the regulations.  "The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates."  Beechwood Restorative Care

---

[6] As issued on September 26, 2002 and reissued on July 1, 2014.

Ctr. v. Thompson, 494 F.Supp.2d 181, 202 (W.D. N.Y. 2007) (quoting Wilson v. Commissioner of Social Sec., 378 F.3d 541, 545 (6th Cir. 2004)).  Regulations are "presumed valid unless they are shown to be unreasonable or contrary to the provisions of the enabling statute."  U.S. Pipe & Foundry Co. v. Webb, 595 F.2d 264, 272 (5th Cir. 1979).  Furthermore, "a regulation is ordinarily presumed valid, and a party seeking to attack it has the burden of persuading the court that it is invalid."  Am. Exp. Lines, Inc. v. Dredge Admiral, 254 F.Supp. 1, 6, n.8 (S.D. N.Y. 1966).

55.     In other contexts, the Government has touted the Treasury's discretionary rule-making authority to implement the BSA through authority delegated under Treasury Order 180-01 and demanded judicial deference to those regulations.  See, e.g., United States Sec. & Exch. Comm'n v. Alpine Securities Corp., 308 F.Supp.3d 775, 795-796 (S.D. N.Y. 2018).  Indeed, the Government in Alpine Securities makes the identical argument that Defendant has proffered here.

56.     The defendant in Alpine Securities argued, as the IRS did in Norman and Kimble, that "the failure to update the regulation…after the significant 2002 revisions to the [the BSA] precludes the [Government] from enforcing [the Regulations] against [the defendant] for its allegedly deficient [reporting of certain financial transactions]."  Id. at 795.  In opposition to this argument, the Government contended that the BSA's "express delegation of rulemaking authority [to the Treasury]…requires compliance" with the implicated BSA regulations, even though such regulations had not been amended to reflect the revisions to the BSA.  Id.  Notwithstanding the Government's argument in Alpine Securities, when the shoe is on the other foot, the Government takes the opposite tack, as evidenced in Norman, Kimble, Horowitz, Wahdan, Colliot, and Shinday, where the Government asked the respective courts to wholly ignore the regulations and consider them effectively repealed.  The Government cannot have it both ways.

57.     The Treasury and FinCEN had numerous opportunities to amend the regulations if they thought it necessary; there are frequent Federal Register postings of regulatory matters concerning the BSA, in large part to address amendments to the BSA or to fill in regulatory gaps. See, e.g., 70 Fed. Reg. 66754 (Nov. 3, 2005); 71 Fed. Reg. 13260 (Mar. 15, 2006); 75 Fed. Reg. 19241 (Apr. 14, 2010); 75 Fed. Reg. 65806 (Oct. 26, 2010).

58.     However, the Treasury and FinCEN have opted to utilize their discretion under the § 5321(a)(5)(A) *not* to adopt a higher maximum penalty for a willful violation.  The Government successfully argued in Alpine Securities that "the failure to update the regulation[s]," despite changes to the regulated statute, is not fatal to the enforcement of such regulations.  Alpine Sec. Corp., 308 F.Supp.3d at 796.

59.     In 2016, FinCEN substantively amended the willfulness penalty of § 1010.820(g) by adding § 1010.820(i).  Once again, however, FinCEN did not exercise its authority or discretion to adopt Congress's authorized penalty ceiling.  FinCEN amended § 1010.820 (the amended § 103.57) to provide for an inflation-based increase to FBAR penalties assessed after August 1, 2016, pursuant to mandate of the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.[7] Specifically, FinCEN added a subsection (i), which cross-references a new provision "relating to the maximum amount of the penalty."  See 31 C.F.R. § 1010.820(i (cross referencing the penalty adjustment table set forth in 31 C.F.R. § 1010.821); 81 Fed. Reg. at 42505.

60.     This 2016 amendment is illustrative.  When Congress enacted a law that imposed a *mandate* on the Treasury, that is, to increase penalties in accordance with the Inflation Adjustment Act, FinCEN immediately updated its regulations accordingly.  However, when Congress enacted a

---

[7] 28 U.S.C. 2461; 81 Fed. Reg. 41453, 42503 (June 30, 2016).

statute that allowed a *discretionary* increase on maximum penalties, FinCEN chose not to increase the amount of the penalty in the regulations.

61.    In <u>Colliot</u> and <u>Wahdan</u>, the Plaintiff discounted the importance of regulatory inaction. However, this is not a situation where an agency has "shirked its statutory duty by refusing to regulate." <u>Prof'l Drivers Council v. Bureau of Motor Carrier Safety</u>, 706 F.2d 1216, 1221 (D.C. Cir. 1983).  Instead, FinCEN, on more than one occasion, promulgated and amended regulations directly related to FBAR penalties.  Therefore, FinCEN "was clearly acting within its discretion in determining ***not*** to amend the existing regulations." <u>Id.</u> at 1122 (emphasis added).

62.    It should be noted that the FBAR reporting form, Form TDF 90-22.1, even after the 2004 statutory amendment, itself reflected FinCEN's decision not to impose the higher penalties authorized by Congress.  Before 2004, the highest statutory authorized amount for a civil penalty was $100,000.  At the same time, criminal monetary penalties could reach as high as $500,000.  <u>See</u> 31 U.S.C. § 5322(b).  The Form TDF 90-22.1, in effect on June 30, 2009, states that "[c]ivil and criminal penalties, including in certain circumstances a fine of *not more than $500,000*…are provided for failure to file a [FBAR]...." <u>See</u> TDF 90-22.1 (Revised 2000).

63.    It may seem insignificant, at first blush, that the Form TDF 90-22.1 did not reflect the higher permissible civil statutory penalty amounts for willful violations.  However, the Privacy Act of 1974,[8] requires an agency to supply information to the public on a form that includes the penalties for an individual failing to provide the requested information, which informational requirement is in place so that individuals can be provided with "sufficient information" to understand the "penalties for noncompliance." 5 USC § 552a(e)(3); (sufficient information); 5 USC § 552a(e)(9) (penalties for

---

[8] 5 U.S.C. § 552a(e)(3).

noncompliance).  Internal Revenue Manual § 11.3.16.2.3 emphasizes the same legal requirement and justifications of the Privacy Act.

64.     Further, the IRS Form 13449 (Agreement to Assessment and Collection of FBAR Penalties) issued to Steven Schoenfeld cites § 1010.810(g)(2) (and former § 103.57(g)(2)) as authority for imposing the willful FBAR penalties against him—the very regulation the IRS disregarded in the present matter.  A copy of the Form 13449 issued to Steven Schoenfeld is attached herewith as **Appendix B**.

65.     As noted above, "[f]ailure on the part of an agency [such as the IRS] to act in compliance with its regulations is fatal to its actions."  Township of South Fayette v. Allegheny Cty. Housing Authority, 27 F.Supp.2d 582, 595 (W.D. Penn. 1998) (citing Kelly v. R.R. Ret. Bd., 625 F.2d 486, 492 (3d Cir. 1980)).  "[A] validly promulgated regulation binds the government as much as the individuals subject to the regulation; and, this is no less so because the governmental action is essentially discretionary in nature."  Lenfest, 398 F.2d at 715.  Here, the IRS, an agency whose limited delegated authority to impose penalties is "cabined" by § 103.57, as amended by 1010.820, assessed a penalty against Steven Schoenfeld in an amount that represents 50% of the highest account balance in his foreign financial account as of June 30, 2009.  Such assessment is in clear derogation of the controlling regulations, which regulations bind the IRS.

E.  The selective application of the governing regulations renders the IRS' penalty assessment in excess of $100,000 is an "arbitrary and capricious" agency action.

66.     Plaintiff knowingly failed to apply certain controlling regulations validly issued by the Treasury and FinCEN.  A "reviewing court" has the statutory duty to "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  See 5 U.S.C. § 706(2)(A).  Plaintiff has provided no

evidence, nor does such evidence exist, that § 103.57, as amended by § 1010.820, has been validly superseded or withdrawn.  To the contrary, FinCEN repeatedly has reissued and amended the BSA regulations in recent years and preserved the pre-2001 regulatory FBAR penalty structure.  See, e.g., Treasury Order 180-01 (issued Sept. 26, 2002 and July 1, 2014).

67.     If FinCEN wanted to exercise its Congressionally-delegated discretion to increase the maximum mandated FBAR penalty (beyond the inflation adjustment made in 2016), it had ample opportunity to do so during the multiple amendments made to the BSA regulations.  As of the time the Government imposed the penalty on Steven Schoenfeld, the Government continued to cite § 1010.820 as authority for the FBAR penalty.  Moreover, as recently as 2012 the IRS directly cited to § 1010.820 as authority for assessment of FBAR penalties in connection with the redelegation of such authority within the ranks of its own agency.  See Delegation Order 25-13, ¶¶ 2 & 38 (effective April 11, 2012), attached herewith as **Appendix C**.

68.     As a consequence of the foregoing, there is no rational basis to conclude that § 103.57, as amended by § 1010.820, does not control the maximum FBAR penalty  The regulations have not been withdrawn.  FinCEN continued to cite the regulations on Form TDF 90-22.1 as authority for assessing FBAR penalties as of 2009,[9] and the IRS continued to cite them on their Form 13449 as of 2009, the year at issue in this case, for the same reason.  Furthermore, the regulations were amended as recently as 2016.  Certainly § 1010.820 would not continue to be amended if it no longer represented controlling law.  For these reasons, Plaintiff's unsupported, implicit assertion in the present matter and other similar FBAR penalty cases that § 103.57, as amended by § 1010.820, has

---

[9] The IRS updated the form after the year at issue in FinCEN Form 114.

been effectively revoked by the 2004 amendment to § 5321(a)(5) is an arbitrary and capricious agency decision.

69.     Because the IRS acted outside of the scope of its delegated authority and failed to recognize existing regulations, the IRS did not act rationally in assessing FBAR penalties against Steven Schoenfeld.  Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 42-43, 52 (1983).

70.     To avoid violating the "arbitrary and capricious" standard of the Administrative Procedures Act, a federal agency must engage in "reasoned decision-making" and "articulate a satisfactory explanation for its action."  Id.   Here the IRS has failed to rationalize or reason why § 103.57, as amended by § 1010.820, does not apply to cap the willful FBAR penalty at $100,000. Because Plaintiff has failed to articulate any rational reason why such regulations do not apply, the assessment of FBAR penalties in excess of the $100,000 cap necessarily represents an arbitrary and capricious determination as well as an abuse of discretion.  Such federal agency action is unlawful and must be set aside to the extent the assessed penalties exceed $100,000.  See 5 U.S.C. § 706(2)(A)

**F.  Summary Judgment as to penalties is not premature.**

71.     In the Joint Status Motion filed with the Court on October 25, 2018 (Dkt. 62), Plaintiff stated that "deferring a ruling [on Defendant's Motion for Summary Judgment as to capping the penalty at $100,000] will allow the case to proceed quickly to trial…[and] promotes judicial economy."  See Joint Status Motion, ¶ 15.

72.     Plaintiff is correct in asserting that the primary dispute "relates to the amount" of penalty for which the Defendant is liable.[10]   Id.   However, Plaintiff's "prematurity" argument is flawed.

73.     Plaintiff contends that the Court's ruling on this Motion for Summary Judgment would not have a positive impact on settlement negotiations; however, the opposite is true.  Should the Court grant this Motion for Partial Summary Judgment as to the amount of penalties, the economies of the case will shift drastically, and the ability for both sides to reach an agreement as to the Government's recovery would be substantially improved.  Beyond these considerations, however, this Court must also consider the constraints placed on its discretion to stay a ruling on a this Motion for Partial Summary Judgment, which is based only on a question of law.

74.     Partial summary judgment it is a tool made available to the courts for their proper use "when nothing is to be gained by a full trial" as to the issue before the court.  Lovable Co. v. Honeywell, Inc., 431 F.2d 668, 670 (5th Cir. 1970).  Because the Court here is presented with only a question of law, a full trial is unnecessary with regard to this present Partial Motion for Summary Judgment.  Deciding the question of law in advance of the trial promotes judicial economy and narrows the ultimate issues.

75.     "Prematurity" with regard to motions for summary judgment is generally only found when such motions are made prior to the close of discovery.  See, e.g., Convertino v. U.S. Dep't of Justice, 684 F.3d 93, 99-100 (D.C. Cir. 2012); Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989); Fed. R. Civ. P. 56(f).  In the case at hand, discovery was closed on December 11, 2018.

---

[10] Defendant contests that Steven Schoenfeld was willful, and even if he was, that the penalties should be capped at $100,000—both of which contestations affect the amount of penalties.

76.     As noted above, pursuant to Federal Rules of Civil Procedure 56, "[t]he court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" (emphasis added).  As in the present Motion "[t]here are no genuine issues of material fact, and the dispute primarily concerns a question of interpreting a statute and applying it to a specific set of facts."  LTV Steel Co., 41 F.3d at 334.  Therefore, "the issue [is] properly resolved on a motion for summary judgment."  Id.

77.     Indeed, the Supreme Court has held that Rule 56(c) *mandates* the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex, 477 U.S. at 317 (holding that "the plain language of Rule 56(c) mandates the entry of summary judgment" when there is no issue as to any material fact).  Therefore, a court lacks discretion as to staying a ruling on a purely legal issue based on "prematurity," which is a factual consideration.

WHEREFORE, Defendant, Robert Schoenfeld, as distributee of the Estate of Steven Schoenfeld, respectfully requests that this Court grant this Motion for Summary Judgment, finding **(a)** that 31 C.F.R. § 103.57, as amended by § 1010.820, is consistent with 31 U.S.C. § 5321(a)(5)(A)'s permissive language; **(b)** that the IRS was bound to follow the regulations of 31 C.F.R. § 103.57, as amended by § 1010.820, in determining the penalty applicable to Steven Schoenfeld's alleged willful violation of 31 U.S.C. § 5314; **(c)** that the United States acted arbitrarily, capriciously, and without rational basis in assessing a penalty equivalent to 50% of the balance of the account of Steven Schoenfeld on June 30, 2009, **(d)** that any such penalty in excess of $100,000 should be set aside in accordance with 31 C.F.R. § 1010.820(g)(2); and **(e)** that such Partial Motion for Summary Judgment is ripe for review and adjudication.

Date:  January 23, 2019

_____

Fisher, Tousey, Leas & Ball, P.A.

HARRIS L. BONNETTE, JR.
Florida Bar No. 846740
SCOTT ST. AMAND
Florida Bar No. 88843
501 Riverside Avenue, Suite 600
Jacksonville, Florida  32202
Telephone:  (904) 356-2600
Facsimile:  (904) 355-0233
hbonnette@fishertousey.com
dsv@fishertousey.com
mlm@fishertousey.com

Trial Counsel for Defendant, Robert
Schoenfeld

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2019, I electronically filed the foregoing with the Clerk of Court by using the PACER system, which will send a notice of electronic filing to the following counsel of record: (1) David A. Hubbert, Acting Assistant Attorney General, Tax Division, United States Department of Justice, 950 Pennsylvania Avenue, NW, Room 4603, Washington, D.C. 20530, and (2) Kari A.R. Powell and Robert S. Silverblatt, Trial Attorneys, Tax Division, United States Department of Justice, P.O. Box 14198, Ben Franklin Station, Washington, D.C., 20044.

_____

Harris L. Bonnette, Jr.

# Appendix A



# DEPARTMENT OF THE TREASURY
## FINANCIAL CRIMES ENFORCEMENT NETWORK

APR **2** 2003

Robert Wenzel
Acting Commissioner
Internal Revenue Service
1111 Constitution Avenue, NW
Room 3000 IR
Washington, DC 20224

Memorandum of Agreement
and Delegation of Authority for
Enforcement of FBAR Requirements

Dear Mr. Wenzel:

The Financial Crimes Enforcement Network ("FinCEN"), a bureau within the U.S.
Department of the Treasury, administers and enforces the provisions of the Bank Secrecy Act
(the "BSA"), 31 U.S.C. § 5311 et seq., pursuant to a delegation by the Secretary of the Treasury.
The Secretary is directed by 31 U.S.C. § 5314 to require the reporting of transactions with
foreign financial agencies. FinCEN's implementing regulations require that each person subject
to the jurisdiction of the United States report to the Internal Revenue Service ("IRS") any
"financial interest in, or signature authority or other authority over, a bank, securities or other
financial account in a foreign country" and maintain records of accounts required to be reported.
31 CFR §§ 103.24, 103.27, and 103.32. The IRS is the bureau of the Department of the Treasury
charged with the principal responsibility for enforcing and administering the federal tax laws.
The form used to comply with § 103.24 is currently known as the Report of Foreign Bank and
Financial Accounts ("FBAR"), TD F 90-22.1. This agreement between FinCEN and the IRS
states the terms and conditions under which FinCEN delegates its authority to enforce the FBAR
requirements of the BSA to the IRS.

1. <u>Purpose; Legal Authority; Definitions</u>.

(a) <u>Purpose</u>. In promulgating the FBAR requirements, the Secretary found the FBAR to be useful to criminal, tax, and regulatory investigations and proceedings. The purpose of this agreement is to enhance enforcement of the FBAR filing and recordkeeping requirements.

(b) <u>Source of Authority</u>. Pursuant to Treasury Order 180-01, FinCEN has the authority to enforce the FBAR provisions of the BSA, including the imposition of civil money penalties for willful or negligent violations of the FBAR provisions. FinCEN may redelegate this authority to the Commissioner.

(c) <u>Definitions</u>. For purposes of this agreement, the following definitions shall apply:

(1) "FBAR" means the Report of Foreign Bank and Financial Accounts ("FBAR"), TD F 90-22.1 (or any successor form).

(2) "Commissioner" means the Commissioner of the IRS.

2. <u>Delegation of FBAR Enforcement</u>.

(a) <u>General</u>. Subject to the terms hereof, FinCEN delegates to the Commissioner the authority to enforce the provisions of 31 U.S.C. § 5314, 31 CFR §§ 103.24 and 103.32. Such authority includes, with respect to these provisions, the authority to: assess and collect civil penalties under 31 U.S.C. § 5321 and 31 CFR § 103.57; investigate possible civil violations of these provisions (in addition to the authority already provided at 31 CFR § 103.56(c)(2)); employ the summons power of 31 CFR Part 103, Subpart F; issue administrative rulings under 31 CFR Part 103, Subpart G; and take any other action reasonably necessary for the enforcement of these and related provisions, including pursuit of injunctions.

(b) <u>Scope of Delegation</u>. FinCEN delegates only its authority to enforce the FBAR provisions of the BSA to the Commissioner as described above, and nothing in this delegation

affects FinCEN's authority over any other provision of the BSA or its implementing regulations. This delegation to the Commissioner includes the authority to further delegate this authority to any officer or employee within the IRS. Nothing in this memorandum of agreement should be read to diminish any authority already provided to the Commissioner under Treasury Directive 15-41 or 31 CFR Part 103.

3. Revision and Interpretation of FBAR Requirements.

(a) Regulatory and Form and Instruction Revisions. IRS may propose to FinCEN revisions to 31 CFR Part 103 to further enhance enforcement of 31 U.S.C. § 5314 and 31 CFR §§ 103.24 and 103.32. IRS may revise TDF 90-22.1 and its instructions.

(b) Inquiries. The Commissioner will have the responsibility for responding to general inquiries and requests for advice, and providing related assistance to the general public, on compliance with FBAR requirements.

(c) Legal Advice and Assistance. The Office of Chief Counsel, IRS, will provide legal advice, interpretation, and assistance to IRS officers or employees with respect to all matters pertaining to FBARs and advise on, prepare, or issue administrative rulings and proposals for regulatory revisions -- consulting the Office of Chief Counsel, FinCEN when the Office of Chief Counsel, IRS determines it to be necessary or desirable.

4. Reports.

(a) Annual Reports. The Commissioner or his delegates shall supply to FinCEN annual reports of all cases involving violations of the FBAR penalty in a given calendar year.

(b) Contents. Each report shall indicate the aggregate number of penalty assessments and the aggregate dollar amounts. Additionally, each report shall indicate FBAR case disposition by

the following categories: (a) no action, (b) referral to CI, (c) civil assessment, and (d) warning letters.

5. Effective Date; Termination.

(a) Effective date. This agreement shall become effective as of the first Monday immediately following the date on which it is signed on behalf of the IRS.

(b) Termination. This agreement may be terminated by either party upon 30 days' written notice to the other.

Kindly acknowledge the agreement of the IRS to the terms stated above, and your authorization to make such agreement on its behalf, by signing the enclosed copy of this agreement in the space indicated below and returning it to FinCEN, whereupon this document shall become an agreement between the IRS and FinCEN.

Very truly yours,

James F. Sloan
Director

Accepted and agreed to

this _8th_ day of _April_, 2003,

by
Robert Wenzel
Acting Commissioner
Internal Revenue Service

# Appendix B

| Form **13449**<br>(Rev. March 2011) | Department of the Treasury – Internal Revenue Service<br>## Agreement to Assessment and Collection of Penalties Under 31 USC 5321(a)(5) and 5321(a)(6) | Date received by IRS |
|---|---|---|

| Name of Account Holder<br>Steven Schoenfeld | Social security number (SSN) or<br>Employer identification number (EIN)<br>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 |
|---|---|

Address of Account Holder (Number, Street, City or Town, State, ZIP code)

141 Indian Hammock Ln.
Ponte Vedra, FL 32082-2155

## Definition of Penalty Statutes

1. **Foreign Financial Agency Transaction Violation—willful failure to meet recordkeeping requirements and/or report a foreign account on Department of the Treasury Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts:** 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2) (formerly 31 CFR 103.24, 103.32 and 103.57(g)(2))

2. **Foreign Financial Agency Transaction Violation— failure to meet recordkeeping requirements and/or failure to report a foreign account on Department of the Treasury Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts:** 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2) (formerly 31 CFR 103.24, 103.32 and 103.57(g)(2))

3. **Negligent Failure to Report:** 31 USC 5321(a)(6) and 31 CFR sections 1010.350 and 1010.820(h) (formerly 103.24 and 103.57(h)).

4. **Negligent Failure to Meet Recordkeeping Requirements:** 31 USC 5321(a)(6) and 31 CFR sections 1010.420 and 1010.820(h) (formerly 103.32 and 103.57(h)).

5. **Pattern of Negligent Activity:** 31 USC section 5321(a)(6)(B).

| Total proposed penalty (from Page 2 of 2) | $ 614,300.00 |
|---|---|

| Signature Authorization | I consent to the immediate assessment and collection of the penalty amount specified above plus any interest and penalty as provided by law. |
|---|---|

| Your signature | Date signed |
|---|---|

| Representative's signature (valid only with Power of Attorney attached) | Date signed |
|---|---|

Name of Entity (for corporations, partnerships, trusts, etc., when EIN specified above)

| Signature of Authorized Officer | Title | Date signed |
|---|---|---|
| Signature of Authorized Officer | Title | Date signed |

| Name of Examiner<br>Robert W. Wood III | Employee ID number<br>02-28969 | Office<br>SBSE/SAA/Exam | Date (mmddyyyy)<br>09/04/2012 |
|---|---|---|---|
| Name of Supervisor<br>Kenneth Chatham | Employee ID number<br>02-28444 | Office<br>SBSE/SAA/Exam | Date (mmddyyyy)<br>09/04/2012 |

| Catalog No. 36612U | Page 1 of 2 | (www.irs.gov) | Form **13449** (Rev. 3-2011) |

| **Foreign Account Penalty Information** | Name of Account Holder<br>Steven Schoenfeld | Account Holder ID *(EIN or SSN)*<br>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 |
|---|---|---|
| **1** Calendar year<br><br>2008 | Foreign Bank, Institution, or Agent(s)<br>**UBS AG** | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es).)*<br>☒ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5 |
| Maximum value of account<br>$ 1,380,700.00 | Foreign Account number(s)<br>0240-00557560 | Amount of penalty<br>$ 614,300.00 |
| **2** Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es).)*<br>☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5 |
| Maximum value of account<br>$ | Foreign Account number(s) | Amount of penalty<br>$ |
| **3** Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es).)*<br>☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5 |
| Maximum value of account<br>$ | Foreign Account number(s) | Amount of penalty<br>$ |
| **4** Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es).)*<br>☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5 |
| Maximum value of account<br>$ | Foreign Account number(s) | Amount of penalty<br>$ |
| **5** Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es).)*<br>☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5 |
| Maximum value of account<br>$ | Foreign Account number(s) | Amount of penalty<br>$ |
| **6** Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es).)*<br>☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5 |
| Maximum value of account<br>$ | Foreign Account number(s) | Amount of penalty<br>$ |

**TOTAL proposed penalty** *(Enter here and on Page 1 of 2.)*   ▶   $ 614,300.00

Appendix C

**Delegation Order 25-13 (Formerly DO 4-35, Rev. 1)**

**Effective: April 11, 2012**

(1)   **Enforcement of Report of Foreign Bank and Financial Accounts (FBAR) Requirements**

(2)   **Authority:** Except as otherwise set forth in this order, to take any action the Commissioner is authorized to take under the Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements with respect to the enforcement of 31 USC § 5314, 31 CFR § 1010.350, 31 CFR § 1010.306, and 31 CFR § 1010.420, including, with respect to these provisions, the authority to assess and collect civil penalties under 31 USC § 5321 and 31 CFR § 1010.820 and to take any other action reasonably necessary for the enforcement of these and related provisions.

(3)   **Delegated to:** Operations Officer, Fraud/Bank Secrecy Act (BSA), BSA Policy and Operations, Currency Transaction Reporting (CTR) Operations; Chief, BSA Policy and Operations; and Program Manager, BSA Policy.

(4)   **Redelegation:** These authorities may not be redelegated.

(5)   **Authority:** To investigate possible civil violations of the FBAR requirements.

(6)   **Delegated to:** Revenue Agents and Estate Tax Attorneys (Small Business/Self-Employed), (Large Business & International), and (Tax Exempt and Government Entities); Tax Compliance Officers (Small Business/Self-Employed), (Large Business & International), and (Tax Exempt and Government Entities); Tax Auditors (Small Business/Self-Employed), (Large Business & International), and (Tax Exempt and Government Entities); Revenue Officers (Small Business/Self-Employed); Federal State and Local Governments Specialists and Indian Tribal Governments Specialists (Tax Exempt and Government Entities).

(7)   **Redelegation:** These authorities may not be redelegated.

(8)   **Authority:** To issue, serve, and recommend enforcement of summonses pursuant to the summons power of 31 CFR Chapter X, Subpart I.

(9)   **Delegated to:** Director, Fraud/BSA; Area Directors; Directors and Chief, BSA Policy and Operations (Small Business/Self-Employed); Directors, Field Operations (Large Business & International); Directors (Tax Exempt and Government Entities); Field Operations Managers and Compliance and Program Managers (Tax Exempt and Government Entities); Territory Managers (Small Business/Self-Employed), (Large Business & International); Area Managers (Tax Exempt and Government Entities).

(10)  **Redelegation:** These authorities may not be redelegated.

(11)    **Authority:** To serve summonses issued pursuant to the summons power of 31 CFR Chapter X, Subpart I, whether issued personally or by another official.

(12)    **Delegated to:** Revenue Agents and Estate Tax Attorneys (Small Business/Self-Employed), (Large Business & International), and (Tax Exempt and Government Entities); Tax Compliance Officers (Small Business/Self-Employed), (Large Business & International), and (Tax Exempt and Government Entities); Tax Auditors (Small Business/Self-Employed), (Large Business & International), and (Tax Exempt and Government Entities); Revenue Officers (Small Business/Self-Employed); Federal State and Local Governments Specialists and Indian Tribal Governments Specialists (Tax Exempt and Government Entities).

(13)    **Redelegation:** These authorities may not be redelegated.

(14)    **Authority:** To prepare and file proofs of claims for FBAR penalties and to take any appropriate action to protect the government's interest in bankruptcy, state and federal receiverships, and other state and federal insolvency actions.

(15)    **Delegated to:** GS-9 Bankruptcy Specialist, Insolvency Unit (Small Business/Self-Employed).

(16)    **Redelegation:** These authorities may not be redelegated.

(17)    **Authority:** To make referrals to the Department of Justice for the institution of proceedings for collection, including bankruptcy proceedings, under 31 USC § 5321 pursuant to the Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements.

(18)    **Delegated to:** Chief Counsel attorneys with the approval of a supervisory attorney for cases assigned to them.

(19)    **Redelegation:** This authority may not be redelegated.

(20)    **Authority:** To make referrals to the Department of Justice for the institution of proceedings, except for proceedings in collection and bankruptcy, as to any FBAR matter under the Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements.

(21)    **Delegated to:** Chief Counsel attorneys with the approval of a supervisory attorney for cases assigned to them.

(22)    **Redelegation:** This authority may not be redelegated.

(23)    **Authority:** To provide legal advice and assistance under the Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements.

(24)    **Delegated to:** Chief Counsel attorneys with the approval of a supervisory attorney for cases assigned to them.

(25)  **Redelegation:** This authority may not be redelegated.

(26)  **Authority:** To issue administrative rulings under 31 CFR Chapter X, Subpart G.

(27)  **Delegated to:** Supervisory attorneys within the Office of the Associate Chief Counsel (Procedure and Administration).

(28)  **Redelegation:** This authority may not be redelegated.

(29)  **Authority:** Upon request of a person, to provide a pre-assessment hearing and to make the Service's final administrative determination concerning the existence or amount of an FBAR penalty owed or alleged to be owed by a person, and to provide the hearing required by 31 CFR Parts 5 and 900, receive and review evidence, and review the Service's determination.

(30)  **Delegated to:** Appeals Team Managers.

(31)  **Redelegation:** This authority may not be redelegated.

(32)  **Authority:** To enter into and approve a written agreement with any person relating to the person's civil liability for an FBAR penalty, other than an agreement to extend the period of limitations on assessment or collection of civil FBAR penalties.

(33)  **Delegated to:** Officials authorized to enter into and approve closing agreements.

(34)  **Redelegation:** This authority may not be redelegated.

(35)  **Authority:** To sign agreements extending the period of limitations on assessment or collection of civil FBAR penalties.

(36)  **Delegated to:**

  a.  SB/SE Compliance Field personnel - Collection, Examination and Specialty Programs Field Group Managers; Technical Services and Planning and Special Programs (PSP) Group Managers; GS-11 Revenue Agents or GS-11 Tax Compliance Officers in Technical Services and PSP functions.

  b.  SB/SE Campus Compliance personnel - Campus Compliance Services Department Managers or above.

  c.  Other SB/SE Personnel – Enterprise Computing Center/Detroit Computing Center CTR Operations Manager and BSA Workload, Identification, Selection, Delivery, and Monitoring (WISDM) Group Managers.

  d.  W&I Field Compliance Services Sites (Campuses) – Field Compliance Services Department Managers.

e.  Representatives on foreign assignments or foreign travel status – LB&I International Area Revenue Agents, Tax Auditors, and Tax Compliance Officers; Criminal Investigation Special Agents on foreign assignments.

f.  LB&I - Team Managers.

g.  TE/GE -EP and EO: Field Group Managers; GS-11 Reviewers.

h.  Appeals - Appeals Team Managers, Appeals Team Case Leaders, Appeals Officers, and Settlement Officers.

i.  Criminal Investigation - Special Agents in Charge.

j.  Chief Counsel – Supervisory attorneys within the Office of the Associate Chief Counsel (Procedure and Administration), but only for calendar years that are the subject of a pending administrative ruling request under 31 CFR Chapter X, Subpart G.

(37)  **Redelegation:** This authority may not be redelegated.

(38)  **Source of Authority:** Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements between Financial Crimes Enforcement Network and Internal Revenue Service; Treasury Order 180-01; Treasury Directives 15-41 and 34-02; 31 USC § 5314, 31 USC § 5321; 31 CFR § 1010.350, 31 CFR § 1010.306, 31 CFR § 1010.420 and 31 CFR § 1010.820 and Chapter X, Subparts G and I; 31 CFR Parts 5 and 900 through 904.

(39)  This order supersedes Delegation Order 4-35 (Rev. 1). To the extent that authority previously exercised consistent with this order may require ratification; it is hereby affirmed and ratified.

(40)  **Signed:**  Steven T. Miller, Deputy Commissioner for Services and Enforcement