**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA )
      Plaintiff, )
       )
       )
v. )     Case No. 3:16-cv-1248-MMH-PDB
       )
ROBERT SCHOENFELD, a distributee of )
the Estate of Steven Schoenfeld, )
      Defendant. )
_____)

## DEFENDANT'S REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 3.01(c) of the Middle District of Florida, and this Court's March 13, 2019, Order (Dkt. No. 70), Defendant, Robert Schoenfeld, a distributee of the Estate of Steven Schoenfeld ("Defendant"), by and through his undersigned counsel, hereby files a Reply to the United States' Response to Motion for Summary Judgment, and in support thereof states:

1. On February 28, 2019, the District of Connecticut in U.S. v. Garrity, 2019 WL 1004584, issued a Memorandum and Order (the "Garrity Order") granting the Government's Motion to Alter Judgment to 50% of the balance of an unreported foreign financial account pursuant to 31 U.S.C. § 5321(a)(5) (the "Statute"). In doing so, the court found (against the weight of the majority of other district courts)[1] that Treas. Reg. § 1010.820(g) (the "Regulation") was "effectively abrogated" by the Statute's amendment in 2004. The Garrity Order is predicated on the presumption that the Statute, as amended, and the Regulation are inherently irreconcilable, and as such the Regulation must cede to the Statute. This presumption is fatally flawed.

---

[1] See U.S. v. Colliot, 2018 WL 2271381 (W.D. Tex. 2018); U.S. v. Wahdan, 325 F.Supp.3d 1136 (D. Colo. 2018); but see U.S. v. Horowitz, 2019 WL 265107 (D. Md. 2019). The Court of Federal Claims (an Article I court) has, as in Garrity, found for the Government regarding the Treas. Reg. § 1010.820 issue.

2.      The Statute states that the Secretary "may impose" a penalty "the greater of…$100,000 or 50 percent" of the account balance.  The Regulation provides that the Secretary "may assess…a civil penalty not to exceed…$100,000."  Nothing in the plain language of the Statute itself, *which is where the Court's inquiry must end*, suggests that the Statute in any way makes the Regulation obsolete.  Indeed, contrary to <u>Garrity</u>, the language of the Statute "is clear, and there is nothing…that suggests that Congress intended to limit the discretion of the Secretary to determine what penalties should be imposed.  ***Congress' intent and directive ends with the [S]tatute*****.**"  <u>Wahdan</u> at 1139 (emphasis added); <u>see also</u> <u>U.S. v. Shinday</u>, 2018 WL 6330424, at *3 (C.D. Cal. 2018).

3.      The <u>Garrity</u> court ignored, as the Government asks this Court to do, the plain language of the Statute: the Secretary of the Treasury "***may*** impose a civil money penalty" in an amount that is the "greater of $100,000" or "50 percent" of the value of the unreported account.  Although the penalty increase may appear mandatory, at first reading, the very nature of the statute is ***permissive***.  Even the Court of Federal Claims in <u>Norman</u>, which <u>Garrity</u> relies upon, found the statute to be permissive.  <u>Norman v. U.S.</u>, 138 Fed. Cl. 189, 196 (Ct. Fed. Cl. 2018) (finding that the statute "gives the Treasury…discretion to impose a penalty").

4.      The Government in <u>Garrity</u>, as the Government does in its Response, asks the Court to reach beyond the language of the Statute to imply that Congress *intended* the Statute's penalty increase to be mandatory.  As the Supreme Court held in <u>U.S. v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 241 (1989), when the statute is unambiguous, "the sole function of the courts is to enforce it according to its terms."  Because the Regulation can be read in harmony with the ***permissive*** language ("*may* impose") of the Statute, the <u>Garrity</u> court improperly looked beyond the plain meaning of the statute, and, therefore, the Government's reliance on <u>Garrity</u> is improper.  Indeed,

even Garrity, at *2, recognizes that the Statute merely "authorizes" the Secretary to impose higher penalties, it does not mandate that the Secretary do so.

5.      The Government's reliance on Garrity in its Response to refute the Supreme Court's Shultz decision is likewise improper.  Shultz noted that the Bank Secrecy Act's ("BSA") penalties "attach *only upon violation of regulations* promulgated by the Secretary; if the Secretary were to do nothing, the [BSA] itself would impose no penalties on anyone."  416 U.S. 21 at 26 (emphasis added).  The Garrity Order, as cited by the Government in its Response, incorrectly states that Shultz does not "suggest[] that the Secretary must take some formal regulatory action before the penalty provisions of the BSA acquire the force of law."  This is, in fact, precisely what the Shultz decision states.

6.      The Government's Response, relying on Garrity, argues that the BSA's statutory provisions in *Shultz* are distinguishable from those in Garrity or the case at hand, insofar as the regulations, not the statute, contain the reporting requirements and penalty provisions.  Indeed, the Government states that "[o]nce the Secretary defines the conduct subject to penalty, Shultz does not require that he also create regulations about the amount of the penalty."  Response, p. 11; see also Garrity at *3.  The Government's argument (as adopted in Garrity) falls flat due to its mistaken interpretation of the BSA's statutory provisions at issue in Shultz (31 U.S.C. § 1051, *et seq.* (1970)) as compared to the present Statute (31 U.S.C. § 5321 (2010)).  Specifically, 31 U.S.C. § 1121 (1970) requires *specific* reports related to foreign currency transactions, and 31 U.S.C. § 1056 (1970) provides *specific* penalties for the failure to file such reports.  Thus, within the 1970 statutes in Shultz, as within the 2010 Statute at issue here, Congress both "defined the conduct subject to penalty" and authorized the Secretary to "create regulations about the amount of the penalty."  See, e.g., 31 C.F.R. 103.47 (1972) (civil penalties).

7.     The Court in <u>Garrity</u> takes the position, which the Government adopts in the Response, that the Regulation is subject to abrogation by the Statute, in part, because its language "parrots" or mirrors that of the Statute.  However, the very 1972 regulations, upon which the <u>Shultz</u> decision were based, ostensibly "parrot" the 1970 BSA statute.  As the Supreme Court held in <u>Shultz</u>, this mirrored language does not make the implementing regulation any less indispensable.

8.     As a consequence of the foregoing, the distinction that the Government attempts to make between the statutes and regulations at issue in <u>Shultz</u> and the present Statute and Regulation (which distinction the <u>Garrity</u> court erroneously accepted) is unsupported.  As such, this Court should follow the Supreme Court's direction in <u>Shultz</u>, and find that because the Statute is permissive regarding penalties, ***implementing*** regulations are necessary. Thus, the premise of <u>Garrity</u>, that the Statute operates without regulatory implementation, is fundamentally flawed, and reliance on <u>Garrity</u> in the Response, particularly on pages 10 through 12, is likewise inapposite.

9.     Finally, the Response cites <u>Garrity</u> for the proposition that "the Secretary [did not] categorically limit[] his own discretion to enforce fully the FBAR requirement."  <u>Garrity</u> at *4. <u>Garrity</u>, in part, relied upon the Internal Revenue Manual for support of its decision that the Statute had abrogated the Regulation by implication.  <u>See also</u> Response, p. 15.  As stated above, the language of the Statute is plain and unambiguous.  Further, the IRM (by the Government's own admission) has little legal effect and certainly "no force of law."  <u>Id.</u>  Because the language of the Statute is clear, this Court must limit its interpretation to the Statute, and not rely on any external "guidance" as the court in <u>Garrity</u> erroneously did.  <u>See</u> <u>Ron Pair</u>, 489 U.S. 235, 241.

10.     Because the Statute and the Regulation can be read in concert, the very premise of <u>Garrity</u>, upon which the entire Order is based, is faulty.  The <u>Garrity</u> Order, therefore was rendered incorrectly, and the Government's reliance upon it is fundamentally misplaced.

WHEREFORE, Defendant, Robert Schoenfeld, as distributee of the Estate of Steven Schoenfeld, respectfully requests that this Court grant its Motion for Summary Judgment and for any other such relief this Court deems just and proper.

**FISHER, TOUSEY, LEAS & BALL, P.A.**

Date:  March 14, 2019                    By: _____

HARRIS L. BONNETTE, JR.
Florida Bar No. 846740
501 Riverside Avenue, Suite 600
Jacksonville, Florida 32202
Telephone: (904) 356-2600
Primary email: hbonnette@fishertousey.com
Primary email: ssa@fishertousey.com
Secondary email: dsv@fishertousey.com
Secondary email: mlm@fishertousey.com

Attorneys for Defendant, Robert Schoenfeld

## CERTIFICATE OF SERVICE

I hereby certify that on this 14[h] day of March, 2019, I electronically filed the foregoing with the Clerk of Court by using the PACER system, which will send a notice of electronic filing to the following counsel of record: (1) David A. Hubbert, Acting Assistant Attorney General, Tax Division, United States Department of Justice, 950 Pennsylvania Avenue, NW, Room 4603, Washington, D.C. 20530, and (2) Kari A.R. Powell and Robert S. Silverblatt, Tax Division, United States Department of Justice, P.O. Box 14198, Ben Franklin Station, Washington, D.C., 20044.

_____
Harris L. Bonnette, Jr.