IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:16-cv-01248-MMH-PDB |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT SCHOENFELD, a distributee of ) | |
| the ESTATE OF STEVEN SCHOENFELD, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE*

Defendant's motion to exclude evidence of his father's years-long pattern of failing to disclose his foreign bank account misstates the applicable standards and fails under established precedent. Indeed, although Defendant purports to rely on *United States v. Garrity*, No. 3:15-cv-243 (D. Conn.), to support exclusion, the court rejected a similar argument in that case, telling defense counsel that his motion was "wasting [the court's] time." Exhibit A at 25:6-8. Meanwhile, the jury should be instructed on agency law, and Defendant's attempt to block these instructions smacks of gamesmanship. Both of Defendant's motions should be denied.

**I.   The United States should be permitted to introduce evidence of Steven Schoenfeld's repeated failure to disclose his foreign bank account**

From 1993, when he opened the account, through 2010, when he closed it, Steven Schoenfeld never once filed a Report of Foreign Bank and Financial Accounts ("FBAR") disclosing its existence. Defendant's motion, which seeks to exclude this evidence under Rule 404(b), fails for multiple reasons. First, Rule 404(b)'s prohibition against evidence of prior bad

acts has no application here because the actions at issue—Steven's repeated failure to report his account—are intrinsic, as opposed to extrinsic, evidence. Second, even if Rule 404(b) did apply, the evidence is admissible to show willfulness and lack of mistake or accident. And finally, Defendant has failed to show any risk of confusion or unfair prejudice, let alone confusion or unfair prejudice that would substantially outweigh the probative value of the evidence.

    A.  *Rule 404(b) does not apply because the evidence is intrinsic*

Defendant's attempt to exclude the evidence under Rule 404(b) fails at the outset because that rule is the "wrong place" to look. *United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015). That is because the Eleventh Circuit has "repeatedly" held that intrinsic evidence falls "outside the scope of Rule 404(b)." *Id.* Evidence is intrinsic if it meets any one of three criteria: (1) it "arose out of the same transaction or series of transactions" that are at issue in the complaint; (2) it is "necessary to complete the story" for the jury; or (3) it is "inextricably intertwined" with evidence needed to prove liability. *United States v. Shabazz*, 887 F.3d 1204, 1216 (11th Cir. 2018). Although meeting one of these standards is enough, here we satisfy all three.[1]

First, Steven's failure to disclose the account for tax years before and after 2008 is part of the same "series of transactions" as the conduct from tax year 2008. The same Swiss bank account is at issue for all of the years, and each year Steven failed to disclose it in precisely the

---

[1] Many cases cited in this brief are criminal, rather than civil, matters, but that does not affect the standards under Rule 404(b). *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Federal Rule of Evidence 404(b)—which applies in both civil and criminal cases—generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge.").

same way. Second, evidence from other years is necessary to complete the story because Defendant intends to argue that Steven lacked intent—including mental capacity—in 2009 (when the 2008 FBAR was due to be filed) and to suggest that any failure to report the account was merely negligent. Demonstrating a pattern—and particularly one that predates any competency concerns—paints a more complete picture and adds necessary information about the "context, motive, or setup" related to Steven's failure to disclose the account in 2009. *Ford*, 784 F.3d at 1394; *see also United States v. Pringle*, No. 6:17-CR-137-ORL37KRS, 2017 WL 5000244, at *2 (M.D. Fla. Nov. 2, 2017) ("Furthermore, evidence of Defendant's early tax liabilities and run-ins with the IRS may help the jury complete the story of how he allegedly devised the evasion scheme charged."). And finally, the failure to disclose the same bank account over numerous years is inextricably intertwined with the evidence related to the FBAR for tax year 2008 because it all forms part of the same "scheme" (*i.e.*, hiding the existence of the account from the United States government). *Shabazz*, 887 F.3d at 1216.

In the analogous context of prosecutions for tax crimes, evidence of conduct related to returns that are not part of the indictment is routinely classified as intrinsic. *See, e.g.*, *id.* at 1216–17 (noting that "evidence of uncharged tax returns" was intrinsic); *Ford*, 784 F.3d at 1394 (same). This is so even when the evidence relates to years that are not at issue in the case. *See, e.g.*, *United States v. Ristovski*, 211 F.3d 1271, 2000 WL 491513, at *6 (6th Cir. 2000), *as amended* (May 8, 2000) ("Because he was not charged with tax evasion for 1988, Ristovski argues that the trial court erred in declining, as it did, to exclude evidence of the amount of money Precision received from Mason in 1988 in the form of checks payable to cash. Because the 1988 receipts were part of the same tax evasion scheme as that charged, however, the evidence was admissible as 'intrinsic' to the charged conduct."); *United States v. Clements*, 73

3

F.3d 1330, 1337 (5th Cir. 1996) ("As one of the elements of the tax evasion charge, the Government needed to prove that Clements acted 'wil[l]fully.' Direct evidence that Clements was aware of his tax liability, even though prior to the time period of the indictment, was 'inextricably intertwined' with the crime charged. We therefore find that the testimony was 'intrinsic' evidence which does not fall within the meaning of Rule 404(b).") (citation omitted).

    B. *The evidence is admissible under Rule 404(b) even if it is considered extrinsic*

Even if Rule 404(b) did apply, the evidence is still admissible because it is relevant to Steven's willfulness and the absence of a mistake or accident. Under 404(b), evidence is not "admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The list of other permissible uses is "not exhaustive." *United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004); *see also United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) ("At the outset, we note that Rule 404(b) is a rule of inclusion, and that accordingly 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central . . . .") (internal quotation marks omitted). Showing willfulness—the central issue in this case—is an accepted reason for introducing evidence of other acts. *See United States v. Nerey*, 877 F.3d 956, 976 (11th Cir. 2017) (allowing evidence of other acts to "show . . . willful conduct"); *United States v. Dixon*, 698 F.2d 445, 446–47 (11th Cir. 1983); *United States v. Tiner*, 152 Fed. App'x 891, 894 (11th Cir. 2005) (per curiam).

In *Dixon*, as is true here, the other acts related to a tax issue outside the timeframe of the case. The Eleventh Circuit rejected the defendant's Rule 404(b) argument, concluding that "this evidence was properly considered on the issue of the willfulness of Dixon's failure to report fully

his tax liability [during the years at issue]." 698 F.2d at 446–47[2]; *see also id.* at 447 ("Finally, we note that other courts have consistently admitted evidence of tax evasion in pre- and post-indictment years on the issue of the willfulness of the evasion charged in the indictment.").

Meanwhile, in *Tiner*, the Eleventh Circuit allowed the United States to introduce evidence of tax underreporting for prior periods to rebut the defendant's argument that his receipt of professional advice during the period charged in the indictment cleared him of liability for tax evasion. 801 Fed. App'x at 894 ("Because the evidence would show that Tiner had underreported his income in years before he claimed to rely on accountants' and attorneys' advice, the evidence would tend to show that he intended to evade his taxes in the later years when he was purportedly relying on advice."). Here, as in in *Tiner*, the defendant claims that something was special about the time period at issue in the case. Specifically, we expect that Defendant will argue that Steven by 2009 had declined mentally to the point where he could no longer be willful. Evidence that Steven failed to file FBARs dating back to tax year 1993—a time when he was indisputably competent—is relevant to disprove that.

The evidence also bears on the lack of a mistake or accident. We expect that Defendant, once again relying on a claim of mental decline, will argue that any failure to file an FBAR was a mere mistake or accident. Showing that Steven failed to file an FBAR year after year makes it less likely that the failure to do so for tax year 2008 was the result of negligence. *See, e.g.*, *Nerey*, 877 F.3d at 976 ("This testimony helped to establish Nerey's willful involvement in the scheme and an absence of mistake about the health-care-fraud conspiracy."). This is particularly true because Steven also, in prior years, failed to disclose the account on Schedule B of his

---

[2] The Eleventh Circuit appears to have assumed without deciding that the evidence was extrinsic. *Id.* at 447.

5

income tax returns in response to a direct question about foreign accounts. A truthful answer to that question would have directed him to the FBAR filing requirements. This affirmative misstatement each year is inconsistent with an innocent explanation.[3]

As Defendant notes, there are also other criteria under Rule 404(b), but contrary to his argument, the United States readily satisfies them. Apart from a relevant purpose, we must also have "sufficient proof to permit a jury finding that the defendant committed the extrinsic act." *United States v. Horner*, 853 F.3d 1201, 1213 (11th Cir. 2017). Bafflingly, Defendant asserts that we cannot meet this requirement, even though he has admitted in a discovery response that Steven never filed an FBAR. The request sought all FBARs that "Steven Schoenfeld, or someone acting on his behalf, filed with the United States." *See* Exhibit B at RFP No. 2. Defendant responded: "The gravamen of this case is that Steven Schoenfeld failed to file FBARs from 1993 through 2010. As a consequence, there are no responsive documents to this request." *Id.* Defendant's admission surely constitutes "sufficient proof."

Finally, the evidence must comply with Rule 403. Because this requirement exists for both intrinsic and extrinsic evidence, we address it in a separate section below.

### C. The probative value of the evidence substantially outweighs the risk of confusion or unfair prejudice

Evidence of Steven's failure to file across multiple years has enormous probative value, and the risk of confusion or unfair prejudice is nonexistent. Under Federal Rule of Evidence 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a

---

[3] Oddly enough, Defendant does not seek to exclude evidence of Steven's misstatements in prior years on Schedule B. Defendant's artificial distinction between FBARs and income tax returns cannot withstand scrutiny.

6

danger of," *inter alia*, "confusing the issues" or "unfair prejudice." There is no basis to use this rule to exclude evidence of Steven's pattern of noncompliance.

The evidence is extremely probative. Steven is deceased, so the universe of evidence of his willfulness is necessarily limited. Additionally, we anticipate that Defendant will try to argue that Steven lacked the mental competency necessary to willfully fail to file an FBAR for tax year 2008. His conduct in other years is among the best evidence available to respond to this argument. And although evidence from prior years is circumstantial with respect to Steven's willfulness for tax year 2008, such circumstantial evidence is often the primary way of proving willful conduct. *See, e.g.*, *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004) ("This Court has previously held that circumstantial evidence may prove knowledge and intent."); *Estrada v. Dugow*, No. 15-CIV-3189 (ER), 2016 WL 7017412, at *10 (S.D.N.Y. Nov. 30, 2016) (noting that intent is "rarely susceptible to direct proof" and is typically established through reasonable inferences drawn from circumstantial evidence); *United States v. McBride*, 908 F. Supp. 2d 1186, 1205 (D. Utah 2012) (concluding, in FBAR case, that "willful intent may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available") (citation omitted).

By contrast, with respect to the risk of jury confusion, Defendant provides no reasoning as to why the jury would not be able to understand that the pattern of noncompliance is admissible to demonstrate willfulness (or lack of mistake or accident) as opposed to propensity. And his prejudice argument also falls flat. "Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th

Cir. 1977).[4] There is nothing unfair about the jury considering Steven's past failure to file FBARs to determine whether he was willful and whether there was a mistake or accident. This is particularly true because Defendant invited the inquiry by raising the issue of competence. *See Dixon*, 698 F.2d at 447 (rejecting exclusion under Rule 403 in part because the defendant "implicitly disputed the willfulness of the alleged tax evasion"). Here, Defendant expressly denies willfulness, and the evidence he seeks to exclude is material to disproving his argument. The Eleventh Circuit has "refused" to exclude on prejudice grounds "other acts evidence inextricably intertwined" with the conduct at issue in the case, *Shabazz*, 887 F.3d at 1217 (internal quotation marks omitted), and this Court should follow that practice here.

In a last-ditch effort to keep the evidence out, Defendant mischaracterizes prior FBAR decisions to argue that the evidence should be excluded. For instance, Defendant cites to *Garrity* to suggest that the court there found that the failure to file in other years could only constitute negligence. We agree negligence is insufficient to show willfulness, but the *Garrity* court never suggested that the failure to file FBARs in prior years can only constitute negligence. Instead, the court denied a motion to keep out evidence from prior years and told defense counsel he was "wasting [the court's] time." Exhibit A at 25:6-8; *see also id.* at 25:15-19 ("Are you going to tell me that . . . the evidence in this case . . . from before 2005 is not relevant to the issue of intent? Are you seriously going to stand there and tell me that as a lawyer?"). Ultimately, the jury in *Garrity*, after considering all the evidence, including conduct from prior years, found that the taxpayer acted willfully.

---

[4] The Eleventh Circuit has adopted as binding all Fifth Circuit precedent prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Defendant's citation to *Bedrosian* is similarly unavailing. Although the district court found that the taxpayer did not act willfully and suggested that it was not giving much weight to the failure to file FBARs in previous years, that decision was overturned on appeal. *See Bedrosian v. United States*, 912 F.3d 144, 153 (3d Cir. 2018) ("Although we would afford clear error review to an ultimate determination as to recklessness, we cannot defer to a determination we are not sure the District Court made based on our view of the correct legal standard."). In any event, just as the district court in *Bedrosian* had (and will have again on remand) the flexibility to consider the weight to give to the past failure to file, the jury should have that opportunity here. Whether that failure, combined with other facts, crosses the line from negligence to willfulness is a question squarely within the factfinder's province. *See, e.g.*, *United States v. Bohanec*, 263 F. Supp. 3d 881, 890 (C.D. Cal. 2016) (looking, in FBAR case for tax year 2007, to failure to disclose dating back to 2003 as evidence of willfulness).

## II.     The United States should be allowed to utilize agency principles

Although Defendant Robert Schoenfeld feigns surprise at the inclusion of agency law in this case, he is the one who raised the topic. In our original and amended complaints (Dkt. Nos. 1, 6), we pled facts sufficient to demonstrate that Steven, through his own actions, was willful in failing to file an FBAR. During discovery, Robert presented an unusual defense by claiming that he was the one who signed his father's name on a 2008 tax return that inaccurately stated that Steven did not have an interest in a foreign bank account. Because Steven is deceased and there were no witnesses to the signature, Robert's explanation is self-serving to say the least. Now, Robert seeks to go a step further by preventing the United States from informing the jury of the legal significance of his own defense. He has no right to do so.

*A. Agency law principles are relevant to Robert's defense*

When dealing with agency questions arising under federal statutes, such as the one that creates a penalty for the willful failure to file an FBAR, the Eleventh Circuit has instructed courts to look to the Restatement (Third) of Agency. *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1307–11 (11th Cir. 2017). Under that treatise, an agent's knowledge is imputed to the principal. Restatement (Third) of Agency Law Introduction. Meanwhile, a principal is subject to direct liability for the agent's actions when "the agent acts with actual authority or the principal ratifies the agent's conduct." *Id.* § 7.03(1).

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act." *Id.* § 2.01. Such authority can be express or implied. "'Implied authority' is often used to mean actual authority either (1) to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Id.* § 2.01, cmt. b.

Meanwhile, even where an agent lacked authority, the principal can nonetheless ratify the action. When ratification occurs, "the act is given effect as if done by an agent acting with actual authority." *Id.* § 4.01(1). Ratification can create a principal-agent relationship even "when none existed before." *Id.* § 4.01, cmt. a. Ratification happens when the principal "manifest[s] assent that the act shall affect [his] legal relations" or engages in "conduct that justifies a reasonable assumption that [he] so consents." *Id.* § 4.01(2). Notably, a principal "may ratify an act by failing to object to it or to repudiate it." *Id.* § 4.01, cmt. f. Alternatively, a principal can effect

ratification by "receiving or retaining benefits [the act] generates if the [principal] has knowledge of material facts and no independent claim to the benefit." *Id.* § 4.01, cmt. g (citation omitted).

Here, Robert intends to rely on evidence that, if believed by the jury, would be more than sufficient to create an agency relationship between him and his father. During his deposition, for instance, he testified that he signed his father's name on a 2008 tax return that denied the existence of a foreign account. Exhibit C at 62:21–63:10. In response to a request for admission, Robert admitted that he "signed the return with Steven's knowledge" and "told Steven that [he] had done so." Exhibit D at RFA No. 12. Robert has never maintained that Steven disapproved of this in any way.

Additionally, employees of the accounting firm that prepared Steven's 2008 return testified that they frequently dealt with Robert on Steven's behalf throughout the years they prepared Steven's returns. *See, e.g.*, Exhibit E at 27:11-14 (owner of accounting firm testifies that Robert "would bring us the documentation for dad—for Steven Schoenfeld"); Exhibit F at 16:6-12 (tax return preparer says that Robert "contracted with me to prepare his personal tax return as well as that of his father"); Exhibit G at 16:9-18 (another return preparer recalls that "Robert brought in Steven's information").

Although we believe that Robert is being untruthful in many ways in his attempt to minimize Steven's involvement in the 2008 return, his own evidence, if believed by the jury, is sufficient to create an agency relationship. In particular, the evidence can be interpreted to mean either that Robert had actual (express or implied) authority from Steven with respect to his tax return or that Steven ratified Robert's actions. Ratification could have occurred when Steven did not object after Robert purportedly told Steven that he (Robert) signed the tax return. Alternatively, Steven could be viewed as ratifying the tax return by retaining the benefit (the

money saved by improperly failing to pay taxes on the foreign account) obtained for him by Robert.

Moreover, if the jury finds there to be a principal-agent relationship, there is abundant evidence of Robert's willfulness that can be imputed to Steven. Robert knew about the account since shortly after it was opened because he traveled to Switzerland with his father in the 1990s to visit UBS, where the account was held. Exhibit C at 32:9–33:25. Robert even had signature authority over the UBS account and corresponded with the bank on Steven's behalf. Exhibits H–J. And although the account had well over $1 million (and even though he was the sole beneficiary), Robert says he forgot about the account's existence and that this gap in his memory is the reason for failing to disclose it to his father's return preparers. *See* Exhibit E at 88:19-20 (reflecting that Robert told the owner of the accounting firm that he "did not remember the account" and had "forgotten about it"). The jury can readily conclude that Robert's explanation—that he forgot about a $1 million-plus account, even though he visited UBS and was corresponding with the bank during the period of his purported memory lapse—is consistent with a willful effort to hide the account from the IRS.

### B. The United States did not need to plead agency in the complaint

Despite all this, Defendant wrongfully argues that the jury should not be instructed on agency law because we did not plead it in the complaint. At the outset, the final pretrial order, not the complaint, governs the theories that can be presented at trial. That order "supersede[s] all prior pleadings." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007). Thus, "where a claim was not included in the complaint, but was included in the pretrial order, it is irrelevant that the pleadings were never formally amended." *Id.* (internal quotation marks omitted).

Here, we are not even pursuing a new claim. Our claim is—and has always been—that Steven willfully failed to file an FBAR. And regardless of whether the jury reaches this conclusion based on Steven's willful conduct or based on Robert's conduct that is imputed to Steven, the source of recovery is the same: the distributed proceeds of Steven's estate. All we are doing is responding to a defense that Robert raised during the course of discovery. Our main theory of the case is still that Steven's actions, standing on their own, are enough to show willfulness. But we should also be permitted to argue that, to the extent the jury credits Robert's purported defense, the result is still the same due to agency law.

This is consistent with the principle that the Federal Rules of Civil Procedure "effectively abolish" the "restrictive" rule that required the pleading of every theory of liability. 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1219 (3d ed. Apr. 2019 update); *see also id.* ("The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits.") (footnote omitted); *id.* § 1215 ("It was the design of the rulemakers that the discovery procedures should give the parties an opportunity for securing an elaboration of the allegations; that process—not the pleadings—bears the burden of filling in the details of the dispute for the parties and the court.").

There is no prejudice to Defendant. Allowing us to instruct the jury on agency would not "deprive[] [Robert] of fair notice or discovery" or cause "surprise[]." *Okland Oil Co. v. Knight*, 92 Fed. App'x 589, 602 (10th Cir. 2003). He is the one who brought agency law into play by arguing that he signed his father's name on the 2008 tax return. It would be manifestly unfair to

allow Robert to present a "defense" that legally inculpates his father while simultaneously preventing the jury from being instructed on the significance of his version of events.

None of the cases cited by Defendant suggest otherwise. First, Defendant mischaracterizes circuit law when he says that the "Eleventh Circuit recently held that failure to adequately allege agency and/or actions taken by the agent on behalf of the principal in the complaint is fatal to any later assertion of agency." Dkt. No. 79 at 7 (citing *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1341–42 (11th Cir. 2017)). *Fundamental Long Term Care* was an appeal of an order granting a motion to dismiss. *Id.* at 1341. There was "no allegation in the Complaint that [the alleged principal] took any affirmative act." *Id.* Nor was there any allegation that the alleged principal "acknowledged, accepted, or instructed" the acts of the alleged agents. *Id.* at 1342. The Eleventh Circuit's opinion stands for the uncontroversial proposition that a plaintiff cannot plead agency through "bald[]" assertions. *Id.* at 1342.

In this case, we adequately pled liability based on Steven's actions. Robert then raised a defense that implicates agency law, and we seek to instruct the jury about relevant principles. *Fundamental Long Term* Care merely states that a claim needs to be pled sufficiently in order to survive a motion to dismiss. There is no doubt that our complaint meets that standard. The Eleventh Circuit's opinion nowhere addresses the question of whether, once a complaint survives, the plaintiff's theory can evolve in response to defenses that are raised. Nor is there any basis for the contention that failure to plead a theory forecloses it from being raised later, as *Rockwell* makes clear that we can do just that.

Defendant's other citations—to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Aschcroft v. Iqbal*, 556 U.S. 662 (2009); and *Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348 (S.D. Fla. 2016)—are inapposite for the same reason. All of them deal with the

types of allegations that are necessary to survive a motion to dismiss. None deal with the question at issue here.

## Conclusion

The Court should deny Defendant's motion *in limine* and should permit (a) the introduction evidence of Steven's longstanding failure to file an FBAR and (b) jury instructions on applicable agency law.

Dated: July 22, 2019

>RICHARD E. ZUCKERMAN
>Principal Deputy Assistant Attorney General
>Tax Division
>
>*/s/ Robert S. Silverblatt*
>KARI A.R. POWELL
>ROBERT S. SILVERBLATT
>Trial Attorneys, Tax Division
>U.S. Department of Justice
>P.O. Box 14198
>Washington, D.C. 20044
>202-514-6068 (v)
>202-514-4963 (f)
>Kari.Powell@usdoj.gov
>Robert.S.Silverblatt@usdoj.gov

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that the foregoing has been electronically filed July 22, 2019 with the Court via CM/ECF, which will serve an electronic copy on all counsel of record.

                                      *s/ Robert S. Silverblatt*
                                      ROBERT S. SILVERBLATT
                                      Trial Attorney