IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:16-cv-01248-MMH-PDB |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT SCHOENFELD, a distributee of ) | |
| the ESTATE OF STEVEN SCHOENFELD, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## UNITED STATES' RENEWED MOTION *IN LIMINE* TO EXCLUDE TESTIMONY ABOUT MEDICAL CONDITIONS

Pursuant to Federal Rules of Evidence 701 and 403, the United States renews its motion *in limine* to exclude any testimony or other evidence that Steven Schoenfeld had Alzheimer's, dementia, or any other medical condition affecting his memory or cognition. Per the Court's order (ECF No. 105), the parties recently conducted depositions of Dr. Ana Jorquera and Susan Brubaker. Because Dr. Jorquera was unable to recall whether she diagnosed Steven Schoenfeld with dementia, and because any diagnosis she may have made was the result of an unreliable methodology, her testimony on this subject should be excluded. Meanwhile, although Ms. Brubaker said that Steven Schoenfeld received a dementia diagnosis, the only basis for her testimony is inadmissible hearsay. Finally, the prejudicial impact of allowing Dr. Jorquera or Ms. Brubaker to testify about dementia outweighs any probative value.[1]

---

[1] Our original motion (ECF No. 84) was not limited to Dr. Jorquera and Ms. Brubaker. Instead, it addressed why no witness should be allowed to offer testimony or other evidence that Steven Schoenfeld had Alzheimer's, dementia, or any other medical condition affecting his memory or

### A. Dr. Jorquera could not recall diagnosing Steven Schoenfeld with dementia.

In response to questioning from defense counsel during her recent deposition, Dr. Jorquera repeatedly testified that she was unable to recall ever diagnosing Steven Schoenfeld with dementia. *See* Exhibit 1 at 9:19–10:3 (Q: "[W]ould you agree that Steven Schoenfeld had some kind of dementia at some point in time during your treatment of him? Would you agree with that?"; A: "I don't know that. I mean, I don't—dementia. I don't know. . . ."), 16:2-13 (Q: "Do you recall a time when you concluded that Steven Schoenfeld had dementia?"; A: ". . . So are you asking me that because he was not able to function, I thought that he might have dementia? I don't know because he was not well physically."), 16:14-24 (Q: "Would you have prescribed Aricept . . . if you didn't think he had dementia?"); A: "Yeah. . . .").[2]

After repeatedly getting unfavorable testimony, defense counsel showed Dr. Jorquera a medical record that he obtained in direct contravention of the stay imposed by the Court. This, along with related discovery violations, is the subject of a separate motion for sanctions. *See* ECF No. 115. For present purposes, the critical fact is that Dr. Jorquera could not say that she ever diagnosed Steven Schoenfeld with dementia even after seeing the record, which mentions "[b]aseline dementia" and is dated November 2012 (years after the key time period for this case). Exhibit 1 at 21:12-15 (reference to "[b]aseline dementia"), 70:1-5 (Q: "[A]re you prepared at this

---

cognition. That remains our position, and ECF No. 84 is incorporated by reference herein. This renewed motion only addresses Dr. Jorquera and Ms. Brubaker because their recent depositions represent the lone changes in circumstances from our original motion. We also previously filed another motion (ECF No. 83) related to Dr. Jorquera seeking to exclude a note that she wrote. However, she has since admitted that the contents of that note are false. ECF No. 115 at 4. We are not renewing ECF No. 83 because we now intend to rely on the note to demonstrate Defendant's efforts to obstruct and conceal.

[2] Although Defendant has focused on dementia and has not claimed that Steven Schoenfeld had Alzheimer's or any other specific condition related to memory or cognition, we continue to frame our motion broadly to avoid any undue surprise at trial.

point even having seen this document to go into court and testify under oath that you diagnosed Mr. Schoenfeld with dementia?"; A: "No."). She also agreed with the statement that "in order to treat Mr. Schoenfeld, it was not important to you to know whether he had dementia." *Id.* at 58:25–59:3; *see also id.* at 58:21-24 ("Dementia was not my issue with him.").

      Dr. Jorquera's repeated inability to confirm a diagnosis ends the inquiry. Because Dr. Jorquera was never disclosed as an expert, the relevant question is whether she made a contemporaneous diagnosis as part of her treatment of Steven Schoenfeld. There is no competent evidence that she did.[3] Pursuant to Federal Rule of Evidence 701, which governs opinion testimony by lay witnesses, treating physicians can testify in a lay capacity when relaying "observations based on personal knowledge," but they move into the realm of expert testimony when they go "beyond the scope of [their] treatment." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1322, 1328 (S.D. Fla. 2013). Thus, "when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony . . . ." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317–18 (11th Cir. 2011); *see also id.* at 1317 (cautioning against allowing "an expert in lay witness clothing") (internal quotation marks omitted). As a result, even if Dr. Jorquera now thinks that Steven Schoenfeld exhibited signs consistent with dementia, that is irrelevant. Her inability to testify to a contemporaneous diagnosis is fatal.

      B.  *In any event, Dr. Jorquera failed to follow a reliable methodology.*

      Even if Dr. Jorquera could substantiate a contemporaneous diagnosis, her testimony should still be excluded because her methodology was unreliable. When a treating physician is

---

[3] To the extent the medical record from 2012 could have constituted evidence, even though it is from years after the relevant timeframe, Defendant should be prohibited from relying on it for the reasons discussed in our sanctions motion.

3

testifying as a lay witness, any opinions "still must be based on a scientifically reliable methodology." *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 605 (N.D. Fla. 2009). One of the primary ways to establish the reliability of a psychological diagnosis such as dementia is to follow the Diagnostic and Statistical Manual ("DSM"). *See, e.g.*, *Hall v. Fla.*, 572 U.S. 701, 704 (2014) (referring to the DSM as "one of the basic texts" used in making diagnoses); *United States v. Friedlander*, 395 Fed. App'x 577, 581 (11th Cir. 2010) (per curiam) (finding no error in exclusion of testimony from witness who failed to use the DSM or any other "quantifiable scientific methodology"); *United States v. FNU LNU*, No. 6:10-CR-238ORL22TBS, 2016 WL 158769, at *1 (M.D. Fla. Jan. 14, 2016) (upholding Magistrate's determination that a doctor was "unable to support her vague diagnosis of an unspecified dementia" and noting Magistrate's finding that the doctor "did not satisfy the two requirements for diagnosing dementia set forth in the Diagnostic and Statistical Manual").

Asked whether it was her practice to "follow the guidelines in the DSM" to make a dementia diagnosis, Dr. Jorquera testified, "I don't think so." Exhibit 1 at 53:15-20. When presented with DSM-approved indicators of dementia, Dr. Jorquera confirmed that she did not use any of them to diagnose Steven Schoenfeld. *Id.* at 61:12-20. This is so even though she conceded that the DSM was "probably" an "accepted medical document in the neurology community" and that it provided a "scientifically reliable methodology for making a diagnosis." *Id.* at 53:23–54:6. Asked why she did not make a practice of relying on the DSM, she testified, "I don't know." *Id.* at 53:21-22.

Dr. Jorquera's disregard for the DSM means that she did not perform necessary assessments. Per the DSM, indicators of vascular dementia (the type Steven Schoenfeld allegedly had due to his strokes) include aphasia (language disturbance), apraxia (impaired ability to carry

4

out motor functions), agnosia (failure to recognize or identify objects), and disturbance in executive functioning (such as planning, organizing, sequencing, and abstracting). Exhibit 2 at 146. Dr. Jorquera could not offer any evidence that Steven Schoenfeld had any of these symptoms. Although tests exist to determine whether a patient has aphasia, she did not perform any of them on Steven Schoenfeld. Exhibit 1 at 55:12-24. Dr. Jorquera did not recall if Steven Schoenfeld had apraxia, and she did not administer any of the available tests to determine its presence. *Id.* at 54:22-23, 55:25–56:17. She similarly did not test for agnosia. *Id.* at 56:18-23. And she did not recall performing any tests to evaluate executive functioning. *Id.* at 57:4-12. In fact, she did not even recall doing *any* formal tests to evaluate Steven Schoenfeld's memory. *Id.* at 57:13–58:3.

Even setting aside the failure to use the DSM, Dr. Jorquera's methodology is unreliable for other reasons as well. For instance, she testified that there are various objective indicators of dementia, such as CT scans, MRIs, EEGs, lumbar punctures, and genetic testing. *Id.* at 43:16-21. However, she was unable to offer evidence from any of these sources that would support a contemporaneous dementia diagnosis. With respect to CT scans, Dr. Jorquera testified that atrophy in the hippocampus could indicate dementia. *Id.* at 45:23–46:8. But she did not know whether Steven Schoenfeld's CT scans reflected any such atrophy. *Id.* at 46:12-14. Meanwhile, she did not recall whether Steven Schoenfeld had any MRI tests. *Id.* at 47:21-22. Asked if any of Steven Schoenfeld's "EEG results spoke to the issue of memory or cognition," Dr. Jorquera testified, "I don't remember. No." *Id.* at 63:23-25. And she did not recall whether Steven Schoenfeld had a lumbar puncture. *Id.* at 64:1-6. Finally, he did not receive any genetic testing, as Dr. Jorquera said that option was not yet available when she treated him. *Id.* at 64:7-9.

5

In sum, there are established criteria for diagnosing dementia, and Dr. Jorquera did not use them. This lack of testing reinforces her admission that when it came to treating Steven Schoenfeld, "[d]ementia was not my issue with him." *Id.* at 58:21-24. Thus, even setting aside her inability to offer a contemporaneous diagnosis, her testimony should be excluded on the independent ground that there is no reliable basis for it.

### C. Ms. Brubaker's testimony is inadmissible hearsay.

Ms. Brubaker said that a doctor diagnosed Steven Schoenfeld with dementia, Exhibit 3 at 91:20–92:10, but her testimony is inadmissible hearsay. Although statements made by a patient to a doctor for purposes of a diagnosis fall within an exception to hearsay under Federal Rule of Evidence 803(4), the resulting diagnosis remains hearsay. *See, e.g.*, *Field v. Trigg Cty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) ("We agree that the hearsay exception set forth in Fed. R. Evid. 803(4) applies only to statements made by the one actually seeking or receiving medical treatment."); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996) ("Rule 803(4) does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the patient."); *Truschke v. Phyllis Chaney, LPN*, No. 5:17-CV-93, 2019 WL 1960344, at *5 (S.D. Ga. May 2, 2019) ("[T]he Court finds that Rule 803(4) does not apply to the statements made by the ER doctor or by Dr. Barber to Plaintiff."). Because Ms. Brubaker's sole foundation is inadmissible hearsay, she should not be permitted to testify on the subject.

### D. Dr. Jorquera and Ms. Brubaker should also be prohibited under Rule 403 from testifying on the subject.

Finally, under Federal Rule of Evidence 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

6

needlessly presenting cumulative evidence." In light of the lack of a diagnosis and the unreliability of the methodology, the probative value of Dr. Jorquera's testimony about a mental condition would be extremely weak. By contrast, there is a substantial risk that the jury would be confused or misled about Steven Schoenfeld's capacity to act willfully if evidence were admitted suggesting he had a condition affecting his memory or cognition. This prejudice is severely compounded by the fact that Defendant withheld and spoliated the medical records that the United States could have used to probe Dr. Jorquera's testimony. *See* ECF No. 115 at 10, 15–16.

For her part, Ms. Brubaker cannot recall who purportedly diagnosed Steven Schoenfeld with dementia, or even when the alleged diagnosis was made. Exhibit 3 at 91:20–92:10. She originally testified it was Dr. Jorquera, but then she clarified that it could have been a cardiologist. *Id.* As discussed, Dr. Jorquera does not recall making the diagnosis. Meanwhile, Dr. Jorquera is the only doctor Defendant disclosed, and to the extent another doctor made a diagnosis, allowing an undisclosed witness's opinion to be presented would be highly prejudicial. This prejudice would be particularly acute because the United States specifically asked Defendant about witnesses with knowledge of his defenses in an interrogatory. *See* ECF No. 86-3 at Interrog. No. 1. In any event, given Ms. Brubaker's inability to recall crucial details, her testimony is of limited probative value. By contrast, there is a substantial risk that the jury would be confused or misled by a secondhand recounting of a purported dementia diagnosis. This is particularly true because Defendant does not intend to offer testimony from any doctor who can definitively confirm a dementia diagnosis and explain the necessary context.

## Conclusion

Dr. Jorquera's testimony from her second deposition confirms that she should not be able to offer a diagnosis. Meanwhile, Ms. Brubaker also lacks an admissible foundation for any such

testimony. Because, for the reasons addressed in our original motion (ECF No. 84), there is no other source of competent evidence, the Court should exclude all testimony or other evidence that Steven Schoenfeld had Alzheimer's, dementia, or any other medical condition affecting his memory or cognition.

## CERTIFICATION OF CONFERRAL

In compliance with Local Rule 3.01, counsel for the United States conferred with Defendant's counsel, Harris Bonnette, in a good faith effort to resolve the issues raise herein but was unable to do so.

Dated: October 7, 2019

        RICHARD E. ZUCKERMAN
        Principal Deputy Assistant Attorney General
        Tax Division

        */s/ Robert S. Silverblatt*
        KARI A.R. POWELL
        ROBERT S. SILVERBLATT
        Trial Attorneys, Tax Division
        U.S. Department of Justice
        P.O. Box 14198
        Washington, D.C. 20044
        202-514-6068 (v)
        202-514-4963 (f)
        Kari.Powell@usdoj.gov
        Robert.S.Silverblatt@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that the foregoing has been electronically filed this 7th day of October, 2019 with the Court via CM/ECF, which will serve an electronic copy on all counsel of record.

                                      *s/ Robert S. Silverblatt*
                                      ROBERT S. SILVERBLATT
                                      Trial Attorney