**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA　　　)<br>　　　Plaintiff,　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>ROBERT SCHOENFELD, a distributee of )<br>the Estate of Steven Schoenfeld,　　　)<br>　　　Defendant.　　　　　　　　　　)<br>_____ ) | Case No. 3:16-cv-1248-MMH-PDB |

**DEFENDANT'S RESPONSE
TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS**

Defendant, Robert Schoenfeld, a distributee of the Estate of Steven Schoenfeld, by and through his undersigned counsel, hereby responds to the Plaintiff's Motion for Sanctions (the "Motion") against Defendant. In support thereof, Defendant states as follows:

From the inception of this case, Defendant has argued that Steven Schoenfeld's incompetence vitiates the willfulness requirement of 31 U.S.C. § 5321. To support this defense, Defendant has indicated his intention to rely upon the testimony of Dr. Ana Jorquera, Steven Schoenfeld's neurologist. Defendant has argued time and again that Dr. Jorquera diagnosed Steven Schoenfeld with dementia, and that he was treated for such condition. Dr. Jorquera affirmatively testified that she did not possess any medical records regarding Steven Schoenfeld's diagnosis and/or treatment, which assertion Plaintiff and Defendant took at "face value." Neither party believed that *any* medical records were in existence, and neither party took any steps to secure such "nonexistent" records. When the Court admonished Plaintiff for failing to subpoena the hospital records, Defendant took heed and endeavored to do so, which is the basis for the present discovery dispute.

Plaintiff accuses Defendant of "egregious" discovery violations. See Motion, p. 23. Although Plaintiff engages in *ad hominem*, personal attacks throughout the Motion, the bark of such accusations

does not justify the bite of the sanctions that Plaintiff seeks.  Plaintiff likewise claims that Defendant "violated" the Court's pretrial order "on multiple fronts" by "endeavoring to obtain Steven Schoenfeld's medical records."  This is a mischaracterization of the Court's order, which stated that the parties were permitted "to conduct the depositions of Ms. Brubaker and Dr. Jorquera ***and to conduct limited discovery regarding those witnesses as well as Plaintiff's agency theory, if necessary***."  See Order on Pretrial Conference, Doc. No. 105, para. 2 (emphasis added).  Defendant reasonably interpreted "conducting limited discovery" regarding "Plaintiff's agency theory" and regarding Dr. Jorquera as permitting Defendant to seek records to corroborate his defense to Plaintiff's agency theory.   It was this Court's admonition to Plaintiff that spurred Defendant to seek such records, which records it willingly shared with Plaintiff shortly after the undersigned's associate began reviewing them.

As will be described below, the undersigned received the hospital records in August 2019, and the undersigned's associate did not review them until the day before Dr. Jorquera's deposition. Three days after the undersigned's associate began reviewing the approximately 7,400 pages of medical records, Defendant transmitted all such records to Plaintiff, even though the undersigned's associate had not yet uncovered a single responsive document.  Indeed, it took Plaintiff over a month to discover eight responsive pages out of 7,400.  See Motion, Exhibits 6 & 7.

Since obtaining the hospital records, Defendant has fully accommodated Plaintiff's request to be provided with all such documents (even though Plaintiff had not formally requested them).  To accuse Defendant of engaging in a "pattern of bad faith obstructionism" (Motion, p. 2), is simply false.  Because Defendant has continuously indicated that he does not intend to use any of the 7,400 pages of medical records as evidence of any kind at trial, the sanction of exclusion of such evidence is unnecessary.  All other sanctions that Plaintiff calls for are baseless and would deprive Defendant of litigating the case on its merits for what is, at most, good faith negligence.

**A.  United States requests limited scope of discovery materials.**

1.      On August 3, 2017, the United States served its Third Request for Production of Documents on Defendant, Robert Schoenfeld (the "Third Request").  The Third Request sought, *inter alia*, "all documents related to Steven Schoenfeld's mental health from 2007 through 2010, including but not limited to medical records, doctor's notes, prescriptions, and medical bills."

2.      The request was narrowly tailored, and did not request all of Steven Schoenfeld's medical records, only those related to Steven Schoenfeld's mental health, nor did it seek any records subsequent to 2010. The United States made no further request for Steven Schoenfeld's medical records; therefore, the Third Request is the sole basis for this discovery dispute.

**B.  Court admonishes Plaintiff for failing to subpoena medical records.**

3.      At the pretrial conference, the Court asked the Plaintiff whether or not it had subpoenaed the records from the hospitals which treated Stephen Schoenfeld.  Counsel for Plaintiff responded that Plaintiff "didn't subpoena the hospital[s]."  Nor did Plaintiff inquire as to which hospitals treated Steven Schoenfeld.  Plaintiff stated that Stephen Schoenfeld's neurologist, Dr. Ana Jorquera, "represented that there were no records during her deposition, so [Plaintiff] saw no need to send a subpoena for things that she told us would not exist."  See Transcript of Final Pretrial Conference on July 29, 2019, p. 47, l. 21-25 and p. 48, l. 1-8.  The Court remarked on the record that "I'll be honest.  That doesn't make much sense to me.  When I was in your shoes, I would absolutely have subpoenaed the hospital to see what her records showed."  Id.

4.      Despite the Court's admonition to Plaintiff, the United States failed to subsequently subpoena the hospital records, even though the Court reopened discovery for the limited purpose of gathering evidence with regard to Stephen Schoenfeld's medical conditions.

5.      Defendant, however, heeded the Court's admonition, and on Wednesday, July 31, 2019, the undersigned asked Defendant to request medical records for the hospitals in which Steven

3

Schoenfeld was treated.  Two days later, on Friday, August 2, 2019, the undersigned's associate met with Robert Schoenfeld in person, which meeting the undersigned joined over the telephone.  During this meeting, the undersigned renewed his request that Defendant request medical records from the hospitals the treated Steven Schoenfeld.

6.  Defendant followed through with the request and delivered the medical records to the undersigned's Ponte Vedra Beach office.  Defendant delivered the first batch of documents (records of Baptist Health Systems) toward the end of the following week, and he delivered the second batch of documents (records of Memorial Hospital) on August 13, 2019.  The records were voluminous. On the morning of August 27, 2019, the eve of Dr. Jorquera's deposition, the undersigned learned that his associate had not yet looked through the records.  The undersigned asked his associate why he had not yet looked through the files, and his associate stated that because the files would not be admissible as evidence, he did not see the value in dedicating the hours it would take to look through the files.  Although the undersigned agreed that the documents would not be admissible as evidence, the undersigned asked his associate to locate any documents that might refresh Dr. Jorquera's memory as to a diagnosis of dementia.  Therefore, August 27, 2019, was the first time that anyone at the undersigned's firm examined the records in any detail.

**C.  <u>Defendant uses medical record to refresh deponent's memory.</u>**

7.  During the deposition of Dr. Jorquera on the afternoon of August 28, 2019, the undersigned used a single document (a medical record from 2012) that had been culled from the voluminous records to refresh Dr. Jorquera's memory.  The undersigned had no intention of introducing that record, or any other records received from the hospitals as evidence at trial, or to use such records in any manner other than to refresh Dr. Jorquera's recollection as to whether or not she had diagnosed Steven Schoenfeld with dementia.

**D.  Plaintiff claims egregious discovery violations.**

8.      Upon using this document to refresh Dr. Jorquera's memory, Counsel for the United States castigated the undersigned—both on and off the record—for failing to provide the United States with the hospital records.

9.      On Thursday, August 29, 2019, Counsel for the United States sent an email to the undersigned in which Counsel for the United States indicated an intent to seek sanctions from the Court with respect to what Counsel for the United States termed "Defendant's serious discovery violation."

10.      On September 5, 2019, the Undersigned sent a conciliatory letter to Counsel for the United States in an attempt to explain the misunderstanding as to the documents.  The undersigned further sent copies of *all* of the medical records that the undersigned had obtained from Defendant, even though the undersigned had not yet identified any documents responsive to the United States' discovery requests.

11.      On September 20, 2019, Plaintiff filed an *unopposed* motion to lift the Court's stay so that Plaintiff could file a Motion for Sanctions.  On October 4, 2019, Plaintiff filed its Motion for Sanctions (the "Motion"), which Motion forms the basis of this reply.

**E.  Plaintiff makes inaccurate and baseless claims against Defendant.**

12.      The preamble for the Motion states that the United States seeks sanctions against the Defendant "for taking actions outside of the limited grounds delineated by this Court's stay order." The preamble further notes that Defendant surreptitiously obtained medical records "without the Court's permission."  This allegation is baseless.  As noted above, the Court made its ruling to permit additional discovery in open court on July 29, 2019, which it memorialized in its August 2, 2019, Order.  Such Order specifically permitted the parties to "conduct limited discovery" regarding the depositions of Susan Brubaker and Dr. Ana Jorquera, "as well as Plaintiff's agency theory."

5

13.     Defendant had placed Plaintiff on notice that Ms. Brubaker and Dr. Jorquera would both be called as witnesses by the Defendant to testify as to Steven Schoenfeld's mental health and cognitive abilities.  Further, Defendant had placed Plaintiff on notice that Defendant's defense regarding Plaintiff's new "agency theory" was, in part, that Steven Schoenfeld lacked the mental capacity to form a principal/agent relationship with his son.

14.     Defendant can think of no other avenue of discovery that Defendant could have undertaken with regard to the defense against Plaintiff's agency theory other than to attempt to uncover any additional information or documents related to Steven Schoenfeld's mental health and cognitive abilities, nor has Plaintiff offered any explanation or argument as to why the Defendant's further attempts at discovering such information was not related to "those witnesses [Ms. Brubaker and Dr. Jorquera] as well as Plaintiff's agency theory."  Plaintiff simply argues that such "limited discovery" was inappropriate and sanctionable.  This is erroneous on both counts.

**F.  Plaintiff grossly exaggerates materiality of documents.**

15.     Plaintiff next states that "[m]any of these undisclosed documents are…responsive to [Plaintiff's] requests."  This is a gross exaggeration.  Out of "7,400 pages of undisclosed documents," Plaintiff cites and attaches only "two reports written by undisclosed neurologists during the time period at issue."  One such report was dated November 27, 2008.  This report was attached to the Motion as Exhibit 6.  The second report was dated January 13, 2010.  This report was attached to the Motion as Exhibit 7.  Although Plaintiff cites to two other records (a "2008 record" and a "2009 record"), Plaintiff failed to attach these to the Motion, and so Defendant has no way of knowing whether these records say what Plaintiff claims they say.  Even assuming, arguendo, that the documents state what Plaintiff claims that they do, four records is hardly "many of the…documents," which documents comprise over 7,400 pages of records.

**G.  Plaintiff fabricates delay of turning over hospital records.**

16.     Plaintiff claims that such documents were produced "days after the deposition[s]" of Ms. Brubaker and Dr. Jorquera.  Once again, this is simply untruthful.  The depositions of Dr. Jorquera and Ms. Brubaker took place all day Wednesday, August 28, 2019.  The undersigned's associate spent much of Thursday, August 29, 2019, reviewing the documents in an effort to determine whether any of the records were responsive to Plaintiff's Third Request for Production.

17.     The undersigned's associate did not locate the two documents—out of 7,400 pages of documents—responsive to Plaintiff's Third Request for Production.  Nevertheless, the undersigned decided that he would, in a gesture of good faith, send the documents to Plaintiff once the undersigned's assistant could scan the documents.  Ultimately, the documents were too numerous, and the undersigned had to send the documents to a third-party document production company to scan the voluminous records.

18.     The undersigned's associate contacted Counsel for Plaintiff on Friday August 30, 2019, to ask whether such documents could be shared electronically or if the files needed to be sent to Counsel for Plaintiff by overnight courier.  A copy of this correspondence is attached herewith as **Exhibit A**.  Counsel for Plaintiff instructed that such electronic files (contained on two flash drives) needed to be physically mailed.  Counsel for Defendant did so later that same day, as evidenced by the cover letter signed by the undersigned's assistant enclosing the two flash drives.  A copy of this transmittal letter is attached herewith as **Exhibit B**.

**H.  Defendant amends modified response.**

19.     On page 3 of Plaintiff's twenty-seven-page motion for sanctions, the United States claims that Robert Schoenfeld "violated the Court's [discovery] limitations on multiple fronts."  The first set of alleged "violations" was that Defendant "modified his response [in his answer to the

Amended Complaint] to multiple unchanged allegations," added a new affirmative defense on agency, and "completely rewrote" his affirmative defense relating to willfulness.

20.     With regard to the modification of Defendant's response to "multiple unchanged allegations," Plaintiff identified only one alteration with which it took issue – that of Paragraph 19. When asked to revert this denial to an admission, Defendant willingly did so by filing an Amendment to Answer (Doc. No. 111).  Counsel for Defendant asked if Plaintiff had issue with any of the other amended answers, which were made in response to new theories of liability raised by Plaintiff, including Plaintiff's new agency theory, and Plaintiff indicated only that Paragraph 19 should be corrected.  A copy of the August 20, 2019, email correspondence is attached herewith as **Exhibit C**.

**I.   Defendant relied on testimony of Dr. Jorquera regarding destroyed medical records.**

21.     Plaintiff claims that "Defendant has long denied the existence of medical records." Motion, p. 5.  This is inaccurate.  Both Plaintiff and Defendant were made aware that Dr. Jorquera did not possess any medical records related to her treatment of Steven Schoenfeld, a fact to which she testified (as Plaintiff concedes in the Motion).   As Plaintiff testified at the Pretrial Hearing, Plaintiff took Dr. Jorquera's assertion that no medical records existed "at face value."  Defendant did as well, until the Court admonished Plaintiff to subpoena the records of hospitals that treated Steven Schoenfeld.  The undersigned heeded the Court's admonition, and affirmatively requested that Defendant request such hospital records.

22.     It is accurate that "Defendant did not disclose any medical records that he might use to support his defense of this action."  See Motion, p. 5.  In response to Plaintiff's request for "all documents upon which [Defendant] intend[s] to rely…at trial," Defendant did not describe or produce any documents, because Defendant did not possess any medical records that he might use at trial, nor did he believe that any such records existed.  The hospital records, which form the basis of this Motion, will likewise not be used by Defendant at trial.

23.     With regard to "all documents related to Steven Schoenfeld's mental health from 2007 to 2010, including but not limited to medical records, doctor's notes, prescriptions, and medical bills," the Defendant did not produce any such documents, as he was not in possession of them, nor did Defendant believe that he had custody over or control of such documents (as he believed that no such documents existed).

24.     Despite Plaintiff's characterization of Defendant's allegedly-intentional withholding of such information, Defendant believed in good faith that he did not have custody or control over any "medical records, doctor's notes, prescriptions, and medical bills" which were "***related to Steven Schoenfeld's mental health from 2007 to 2010***," and Defendant maintains that none of the 7,400 pages, with the exception of the eight pages that the Plaintiff attached to the Motion, are responsive to such narrow request.  Although there are records from Memorial Hospital from periods subsequent to 2010 regarding Steven Schoenfeld's mental health, and records from 2007 to 2010 from Baptist Health Systems that do not relate to Steven's mental health, such documents are not responsive to the Third Request for Production as Plaintiff chose to frame the request.

25.     The medical records from Baptist Health Systems relate primarily to treatments for infections, sepsis, and other temporary physical maladies.  References to Steven's cognition were made only with regard to diminished capacity brought on by temporary health conditions, as the Court can see in Exhibits 6 and 7 of the Motion.  Such temporary conditions do not relate to "Steven Schoenfeld's mental health" as the term has been used in this case to describe a chronic, degenerative condition, to which Ms. Brubaker testified competently and from first-hand knowledge.

**J.   Defendant had no time to supplement discovery.**

26.     Despite receiving the hospital records only three days after Defendant first examined them, Plaintiff claims that "Defendant never supplemented" the disclosure with regard to "medical records that he might use to support his defense in this action."  Motion, p. 5.

27.     This claim is false on two levels.  First, Defendant confirmed multiple times with Plaintiff that Defendant had no intention of using the medical records "to support his defense in this action" at trial or otherwise.  The document that the undersigned showed Dr. Jorquera during her deposition was both outside of the scope of Plaintiff's discovery request—it was from 2012—but it was also used purely to refresh Dr. Jorquera's recollection pursuant to Fed. R. Evid. 612 (Writing Used to Refresh a Witness).  Second, before the undersigned had a chance to review the hospital records to determine what, if anything, should be produced, Plaintiff demanded that all such records be produced under threat of sanctions.  Defendant complied, hoping to forestall such action and to avoid burdening the Court with a discovery dispute, but despite being promptly sent every document that Defendant received—which amounted to 7,392 pages of material that was unresponsive to Plaintiff's Third Request for Production (and only 8 pages of responsive materials, from Plaintiff's own admission in the Motion)—Plaintiff *still* filed this Motion for Sanctions.

**K.  Defendant was, in good faith, unaware of being able to request his father's medical records.**

28.     On page 6 of the Motion, Plaintiff states that "Defendant has had control over highly material medical records all along."  This allegation goes to the heart of Plaintiff's underlying theory of egregious behavior on the Defendant's part, and also speaks to the Plaintiff's misguided "spoliation" accusation raised later in the Motion.

29.     As a direct consequence of Dr. Jorquera's deposition testimony, neither Plaintiff nor Defendant believed that any medical records related to Steven Schoenfeld's treatment existed.  Plaintiff expressed as much at the Pretrial Hearing on July 29, 2019.  Upon the Court's admonition to Plaintiff on July 29, 2019, and upon speaking with the undersigned's law partner, John Lawlor, who instructed the undersigned that Defendant could request Steven Schoenfeld's medical records as his "next of kin" pursuant to § 395.3025, Florida Statutes, the undersigned sought such documents.

**L.  <u>Defendant did not "allow" any medical records to be destroyed.</u>**

30.     Plaintiff alleges that there exists "an unknown number of other documents that were destroyed due to Defendant's failure to comply with his discovery obligations."  Motion, p. 10. Further, Plaintiff alleges that "[i]f Defendant had requested the documents in 2017…then there would have been documents available going back at least the 2009."  The door swings both ways, however. Defendant can just as easily allege that "[Plaintiff] allowed records material to [Defendant's] competency defense to be destroyed," by failing to subpoena the documents.

31.     It is a logical fallacy to believe that plaintiff would cut off his nose to spite his face and affirmatively choose not to seek medical records that could have been essential to his defense simply to prejudice the Plaintiff.  Had Defendant believed that such records existed, he would have obtained them to bolster his defense that Steven Schoenfeld was incompetent.

32.     Any records that were destroyed were so destroyed not by Defendant's "negligence" or "bad faith actions," but on account of the hospitals respective medical record retention policy, which Plaintiff acknowledges in its Exhibit 9.

**M.  <u>Defendant, in good faith, lacked knowledge that records were in his "custody or control."</u>**

33.     Defendant does not dispute that the term "control" encompasses documents that he had the right to "obtain on demand."  <u>Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.</u>, 2010 WL 4853891, *3 (M.D. Fla. 2010); <u>Searock v. Stripling</u>, 736 F.2d 650, 653 (11th Cir. 1984). Defendant had no obligation to produce records that he neither believed he had the authority to obtain, nor that he believed did not exist.

34.     The fact that Defendant was Steven Schoenfeld's health care surrogate is unavailing. Even if Defendant held a durable power of attorney, which Defendant disputes, both documents expire at the death of the principal, and Defendant could not have used either to obtain such records.

35.     Plaintiff goes on to note that "[i]n any event, [the undersigned] concedes he was aware that a personal representative could request the medical records of a deceased person….It is undisputed that Steven Schoenfeld *named* [Defendant] his personal representative and that [Defendant] acted as his personal representative."

36.     Although a personal representative may be *nominated* in a will, only a probate court can *appoint* a personal representative.  See § 733.201(1)(a)(1), Florida Statutes.  The probate court may conclude that a nominated personal representative is unqualified or not in the best position to serve as personal representative of the estate.  See § 733.303.  Because "a will may not be construed until it has been admitted to probate,"[1] Defendant was never appointed as personal representative by the probate court, and had no authority to represent himself as personal representative of the "estate," nor has Defendant ever held himself out to be personal representative of a nonexistent estate.

37.     Defendant acknowledges that he could have exercised his subpoena power to obtain such records; however, Defendant's believed that no such records existed—which belief was shared by Plaintiff.  Both parties should have subpoenaed the records of the hospitals where Steven Schoenfeld was treated, and both parties are equally culpable for not doing so.  It does not follow, however, that Defendant should, alone, be sanctioned for not doing so.

38.     Plaintiff's claim that Defendant has still not "compli[ed] with Rule 26(e)," which requires supplementation of the disclosure is inaccurate.  Plaintiff is in possession not only of the 8 pages of responsive documents (which number Plaintiff cites in its Motion), but also the other 7,392 nonresponsive pages of hospital records.  Defendant has supplemented his response to Plaintiff's Third Request to Produce in accordance with Rule 26(e) by providing Plaintiff with such documents.  It is unclear what further supplementation is necessary.

---

[1] See § 733.213, Florida Statutes.

**Defendant did not "spoliate" responsive records.**

39.     As Plaintiff points out, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."   Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009). Plaintiff's citation to Eleventh Circuit authority is appropriate; however, Plaintiff's case is unpublished and was, understandably, "cherry-picked" for its omission of a critical factor—intent.

40.     It is well accepted, in the published opinions of the Eleventh Circuit, that spoliation is not just the destruction of evidence, but the ***intentional*** destruction of evidence.  See Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1308 (11th Cir. 2003) (noting that "in the underlying litigation, Plaintiffs alleged that [Defendant] intentionally concealed" evidence of a drug's defects and Defendant intentionally failed to disclose certain harmful facts); Smith v. Bank of Am., N.A., 2014 WL 897032, *3 (M.D. Fla. 2014) (holding that "[s]poliation is the *intentional* destruction of evidence or the significant and meaningful alteration of a document or instrument" (emphasis added).  Indeed, the Honorable Judge Harvey E. Schlesinger, held that "it is essential that…the party actually destroyed or was privy to the destruction of the evidence" for spoliation to apply.  In re Disposable Contact Lens Antitrust, 329 F.R.D. 336, 430 (M.D. Fla. 2018) (internal citations omitted).

41.     "The imposition of sanctions for spoliation is only appropriate when there is evidence of bad faith."   Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005).   "Mere negligence…is not enough."  Bashir v. AMTRAK, 119 F.3d 929, 931 (11th Cir. 1997).

42.     "In order to establish spoliation, the moving party must prove that: (1) the evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to the movant's prima facie case or defense."   Se. Mech. Servs., Inc. v. Brody, 657 F.Supp.2d 1293, 1299 (M.D. Fla. 2009); Smith, 2014 WL 897032, at *3 (M.D. Fla. 2014).  Although Plaintiff alleges Defendant's conduct was egregious and part of coordinated machinations to deprive

13

Plaintiff of meaningful discovery, Defendant's inaction was at most negligent, and as the Eleventh Circuit has held, negligence is not enough to establish that sanctions are appropriate for spoliation. Bashir, 119 F.3d at 931.

43.     Plaintiff claims that the evidence was "crucial to [its] *prima facie* case or defense." Plaintiff cites the case of Floeter v. City of Orlando, 2007 WL 486633, at *6 (M.D. Fla. 2007) to stand for the proposition that "interference with the ability to respond to the opposing party's defense is sufficient for purposes" of establishing that evidence is "crucial to the movant being able to prove its *prima facie* case or defense."  Floeter does not stand for this proposition.

44.     In Floeter, this Court found that although emails that were destroyed in the ordinary course of business, which emails rebutted the City of Orlando's defense, "may be relevant…they are not crucial."  Id.  The Eleventh Circuit has held that a "[p]laintiff's inability to rebut a defense theory" based on the unavailability of destroyed evidence "is not a 'significant impairment' of the plaintiff's ability to prove it's [*prima facie*] case" where the "plaintiff cannot show that the actual destruction [of the evidence] led to their inability to prove their lawsuit.  Therefore, the district court properly dismissed Plaintiff's spoliation claim."  Green Leaf Nursery, 341 F.3d at 1309.

45.     Critically, the Eleventh Circuit has held where a party may, itself, subpoena records but fails to do so, such records cannot be said to be "crucial" to the party's claim or defense, which is an essential element of the test for spoliation.

46.     In Searock v. Stripling, 736 F.2d 650, 654 (11th Cir. 1984), which case Plaintiff cites on page 11 of their Motion, the Eleventh Circuit held that "[c]learly, [the plaintiff] had the ability to subpoena these documents by taking the deposition of the custodians of the records of the companies concerned, Fed.R.Civ.P. 45(d)(1); however, the record does not reflect any such attempt by [the plaintiff]."  Id.  Most importantly, "***[s]ince [the plaintiff] also could have obtained the required documents—if they were then in existence—and failed to attempt to do so, it does not appear that***

*[the plaintiff's] preparation for trial was substantially prejudiced by [the defendant's] failure to obtain and produce them.* Id. (emphasis added).

47.    The Eleventh Circuit has noted that sanctions for failing to make discovery are appropriate in only the most egregious situations, such as where a party, time after time, fails to comply with court orders, or there is a clear record of delay, gamesmanship, and *willful contempt*. In re Se. Banking Corp., 204 F.3d 1322, 1332 (11th Cir. 2000) (violation must be willful, and willfulness will not be found when "[v]iolation of discovery [is] caused by simple negligence [or] misunderstanding); cf. Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983) (multiple failures to comply with discovery orders); Hildebrand v. Honeywell, Inc., 622 F.2d 179, 181 (5th Cir. 1980) ("willful contempt" and purposeful delay).[2]

48.    Defendant has maintained throughout this case that Steven Schoenfeld was mentally incompetent and therefore could not have formed a willful intent to not file his 2008 FBAR. Consequently, had Defendant believed that such documents existed and it was within his power to obtain medical records to prove such incompetence, he would have done so.  Defendant exhibited no bad faith whatsoever by not requesting documents which he believed (a) did not exist, and (b) were outside of his custody and control.  As a consequence, sanctions for spoliation are unwarranted. Flury, 427 F.3d at 944; Bashir, 119 F.3d at 931.

49.    When failure to comply with discovery arises from a misunderstanding or misapprehension of facts or law, sanctions are inappropriate, especially when there has been no "long pattern of conduct" or "several failures to obey court rules and [discovery] orders." Jones v. Graham, 709 F.2d 1457, 1462 (11th Cir. 1983); EEOC v. Troy State University, 693 F.2d 1353, 1354 (11th Cir.1982) (no sanctions where noncompliance with a single discovery order stemmed from party's

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit handed down prior to October 1, 1981.

"confusion and misunderstanding"); <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976) (noting that sanctions are appropriate when a party shows "flagrant bad faith" or their counsel's "callous disregard" of a discovery order).  This is especially true when sanctions would result or amount to a situation where "defendant [would not have] an opportunity to be heard on the merits" of his case. <u>Emerick v. Fenick Industries, Inc.</u>, 539 F.2d 1379, 1381 (5th Cir. 1976).  Conduct should be found harmless "if reasonable people could differ as to the appropriateness of the contested action." <u>Devaney v. Cont'l Am. Ins. Co.</u>, 989 F.2d 1154, 1163 (11th Cir. 1993)).

50.     "Whether the opposing party suffered prejudice underlies the harmlessness determination," which is to say, a discovery violation is harmless if the requesting party is not substantially prejudiced by the producing party's discovery oversight or error.  <u>Pitts v. HP Pelzer Auto. Sys.</u>, Inc., 2019 WL 2448821, at *3 (S.D. Ga. 2019).  Although Plaintiff decries "prejudice," it fails to state how such evidence was "crucial to [Plaintiff's] prima facie case or defense." <u>Brody</u>, 657 F. Supp. 2d at 1300; <u>Green Leaf Nursery</u>, 341 F.3d at 1309.

51.     Because Plaintiff failed to subpoena the records, Plaintiff cannot say that its "preparation for trial was substantially prejudiced by [Defendant's] failure to obtain and produce" the hospital records.  <u>Searock</u>, 736 F.2d at 654; <u>Inmuno Vital, Inc. v. Telemundo Grp., Inc.</u>, 203 F.R.D. 561, 573 (S.D. Fla. 2001) (holding even lesser sanctions not appropriate absent "repeated dilatory tactics…in addition to the discovery violations [which have] seriously impacted Plaintiff's ability to prepare effectively for trial"); <u>Adolph Coors Co. v. Movement Against Racism & the Klan</u>, 777 F.2d 1538, 1542 (11th Cir. 1985) (holding sanctions appropriate for parties "guilty of 'willful bad faith and callous disregard' of court directives" and citing "contumacious" and "obstreperous" conduct).

52.     Although <u>Searock</u> does not require a Plaintiff to seek discovery, it does prevent Plaintiff from "sitting on its hands"[3] and later crying foul and prejudice.  Further, the present case is

---

[3] To use Plaintiff's words from page 21 of the Motion.

not one where Defendant was ordered to produce documents and refused, nor had Defendant volunteered to produce the documents and later refused.  Instead, Defendant was under the good faith belief that, as a consequence of Dr. Jorquera's testimony, no such medical records existed.  This mistaken belief was shared by Plaintiff, as evidenced by Plaintiff's statements at the July 29, 2019, Pretrial Hearing.

53.     Plaintiff, here, is seeking the court's blessing to punish Defendant for not requesting the hospital records earlier.  This was never the intention of Rule 37 sanctions.  From the beginning, courts recognized that Rule 37 was to be used to secure compliance with discovery rules rather than to punish.  Robinson v. Transamerica Ins. Co., 368 F.2d 37, 39 (10th Cir. 1966) (explaining that Rule 37(d) of the Federal Rules of Civil Procedure secures "compliance with the discovery rules, not to punish erring parties"); In re Marriage of Lai, 625 N.E.2d 330, 334 (Ill. App. Ct. 1993) (observing "[t]he purpose of discovery sanctions is to coerce recalcitrant parties to cooperate…not to punish").

54.     Finally, even if the Court were to find that the action or inaction taken by Defendant warrant sanctions, such sanctions would remain inappropriate, because "a court should not punish a client when it was the attorney that was responsible for the violation."  Gratton v. Great American Communications, 178 F.3d 1373, 1375 (11th Cir. 1999) (noting that a court should be reluctant in imposing a sanction against a client where the attorney not the client is "culpable" for the alleged violation;[4] Inmuno Vital, Inc. v. Telemundo Grp., Inc., 203 F.R.D. 561, 574 (S.D. Fla. 2001); Atmos Nation, LLC v. All Rise Records, Inc., 2017 WL 3635112, *10 (S.D. Fla. 2017).

**N.  Defendant's Actions were not in bad faith.**

55.     Plaintiff vehemently accuses Defendant of "undertak[ing] a campaign to 'obfuscate the truth.'"  Motion, p. 17.  For this proposition, Plaintiff cites Malautea v. Suzuki Motor Co., 987

---

[4] The court in Gratton ultimately held sanctions warranted when party/client's actions were found to independently grossly violate discovery orders in addition to attorney's willful violations.

F.2d 1536, 1540, 1545 (11th Cir. 1993).   In <u>Malautea</u>, the defendants "willfully violated ***three*** discovery orders" and were provided "adequate notice and opportunity to show legitimate excuse for failing to comply," which they refused to heed.   <u>Id.</u>   In the present case, Defendant took "corrective action" (by sending Plaintiff all 7,400 pages of hospital records) *prior* to Plaintiff filing its Motion for Sanctions, unlike in <u>Malautea</u>.

56.     Plaintiff claims that Defendant "hid [his discovery violations] just like he hid the medical records."   The implication that Defendant attempted to conceal the records is scandalous and untrue.   The records were brought to Plaintiff's attention the day after they were first examined.   That the records came out during the deposition of Dr. Jorquera was unfortunate, but Defendant had not had an opportunity to fully review the records to determine whether any were responsive.   From the documents that the undersigned's associate had reviewed, *no such hospital records were responsive*. Finding the proverbial "needle in the haystack" is illustrated by the fact that it took Plaintiff over a month to find four questionably responsive documents out of 7,400 pages worth of documents.[5]

57.     It is likewise untruthful to state that "Defendant did nothing to acknowledge or attempt to cure his discovery violations."   Defendant sent all documents to Plaintiff prior to carefully reviewing all of them.   Defendant further sent a letter to Plaintiff on September 5, 2019,[6] explaining how Defendant obtained such records, and how Plaintiff was in possession of the entire corpus of medical records—including those that bore no relevance to their Third Request for Production.   This is hardly the "utter lack of remorse" that the Southern District of Florida found in <u>Nardolilli v. Bank of America, Corp.</u>, 2013 WL 12153503, *2 (S.D. Fla. 2013).

---

[5] The documents were sent on August 30, 2019, and the Motion for Sanctions was not filed until October 4, 2019.
[6] Such letter was attached as Exhibit 5 to Plaintiff's Motion, and is attached herewith as **Exhibit J**.

**O.** **The United States has not been prejudiced.**

58.     Plaintiff claims to have suffered "unquantifiable prejudice" for two reasons: (1) Plaintiff's litigation strategy would have changed; and (2) Plaintiff lost the benefit of the records that "Defendant allowed to be destroyed."

59.     Plaintiff claims that it would have hired an expert to review Steven Schoenfeld's medical records, as they did in U.S. v. Garrity, 2019 WL 1004584, *1 (D. Conn. 2019).  This is purely speculative, but even assuming, for argument's sake, that it is true, Plaintiff could have (and perhaps should have) subpoenaed Steven Schoenfeld's medical records.  Although the Plaintiff attempts in Footnote 11 to explain away their failure to issue subpoenas, their argument is unavailing.  Plaintiff states "in response to our interrogatory" Defendant failed to provide a list of medical providers.  This is patently untrue.  Plaintiff asked no interrogatories about Steven Schoenfeld's medical providers.  Copies of Plaintiffs three sets of interrogatories are attached herewith as **Exhibit D** (First Set), **Exhibit E** (Second Set), and **Exhibit F** (Third Set).  Defendant never indicated in response to any interrogatory that Dr. Jorquera was the only medical professional with knowledge of Steven Schoenfeld's competency, only that she was the only one of which he was aware.  Copies of Defendant's responses to the three sets of interrogatories are attached herewith as **Exhibit G** (First Set), **Exhibit H** (Second Set), and **Exhibit I** (Third Set).

60.     The only discovery that Plaintiff undertook with regard to Steven Schoenfeld's competency or mental health was in Plaintiff's Third Request to Produce, where Plaintiff asked only for: "All documents related to Steven Schoenfeld's mental health from 2007 to 2010, including but not limited to medical records, doctor's notes, prescriptions, and medical bills."  Defendant replied that to the extent that Defendant was in possession of any such documents, he would provide them to Plaintiff within a reasonable period of time.  ***Plaintiff never once specifically asked for a list of***

*medical providers, hospitals, or physicians who treated Steven Schoenfeld.*  It is improper to state that Defendant "withheld" such information; Plaintiff never asked Defendant for it.

61.     Plaintiff did not even ask for such information after being admonished by this Court to do so, nor did Plaintiff move to compel Defendant to produce any additional documents.  To accuse Defendant of outright lies is inappropriate.  Plaintiff could have easily narrowed the scope of its subpoenas with a simple interrogatory, or even by simply sending the undersigned an informal letter.  Instead, Plaintiff "sat on its hands" and chose not to perform anything but the most basic inquiry, and Defendant should not be sanctioned for Plaintiff's inaction.

**P.  Defendant's conduct was reasonable, at worst negligent, and, therefore, sanctions are inappropriate.**

62.     This is not a case of first impression for the Eleventh Circuit.  In Searock, referenced above, the trial court imposed discovery sanctions for "failure to produce documentation."  The party in Searock was ordered to produce requested documentation and refused the court's order.  The Eleventh Circuit reversed the sanctions imposed by the trial court, finding that the requesting party took no action "to secure these 'crucial' documents itself."  "Clearly [the party] had the ability to subpoena these documents…however, the record does not reflect any such attempt."  Therefore, "[s]ince [the requesting party] could have obtained the required documents…and failed to attempt to do so, it does not appear that [the requesting party] was substantially prejudiced by [the non-producing party's] failure to obtain and produce them."  Id. at 654.

63.     Although Plaintiff accuses Defendant of numerous bad acts in the Motion, Plaintiff does not accuse Defendant of violating this Court's order to produce discovery.  Nor did Plaintiff move for sanctions *three* times, which is how many motions the requesting party in Searock made against the "recalcitrant" party before the District Court even saw fit to grant sanctions.

20

64.     The Eleventh Circuit could not be any clearer.  When a party seeking discovery has the ability and opportunity to subpoena documents that it believes to be "crucial" to its case, or "crucial" to rebutting the other party's arguments, the party seeking discovery has the affirmative obligation to subpoena such documents and to engage in such other and further discovery as is needed to determine whom to subpoena.  Plaintiff failed to do so; therefore, Plaintiff is not "prejudiced" by Defendant's late production of documents.

65.     Plaintiff contends that "[i]t would be fundamentally unfair, if Defendant were permitted to surprise [Plaintiff] at trial with facts or evidence [Defendant] previously failed to disclose."  Kartagener v. Carnival Corp., 380 F.Supp.3d 1290, 1299 (S.D. Fla. 2019).   The undersigned communicated to Plaintiff numerous times, orally and in writing, that Defendant would not use such records as substantive evidence—at trial, or otherwise.  See, e.g., Page 4, Letter to Kari Powell dated September 5, 2019, attached herewith as **Exhibit J**.  The sanctions that Plaintiff seeks under Rule 37(c) are, therefore, inapplicable.

**Q. Exclusion of defendant's "incompetency" defense would deprive Defendant of trial on the merits of the case.**

66.     "The sanctions available under Rule 37(b) are predicated upon the presence of such factors as willful disobedience, gross indifference to the rights of the adverse party, deliberate callousness, or gross negligence."  Dorsey v. Academy Moving & Storage, Inc., 423 F.2d 858, 860 (5th Cir. 1970).  Without having established these factors, Plaintiff's seeks to exclude Defendant's entire defense of incompetence.   This sanction is unwarranted and, if granted, would deprive Defendant of "a trial on the merits."

67.     As the Eleventh Circuit has noted, this court's discretion under Rule 37 to impose a "just sanction" for severe discovery violations "is broad but not unlimited."  Searock, 736 F.2d at 653.  The Supreme Court has interpreted the Rule 37 requirement of a "just" sanction to represent

21

"general due process restrictions on the court's discretion." Malautea, 987 F.2d at 1542 (quoting

Insurance Corp. of Ireland, Ltd., v. Campagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982)).

To this end, the Eleventh Circuit observed that "[c]ourts must afford a sanctioned party due process,

both in determining the bad faith required to invoke the court's inherent power to impose sanctions

and in assessing [sanctions]." In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1306 (11th Cir. 2006);

In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995).

68.     As is often stated in the Eleventh Circuit, courts "have a strong preference for deciding

cases on the merits." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1332 (11th Cir. 2014). Excluding

the fundamental defense of Defendant would "symbolize the Court turning a blind eye to facts at the

heart of this dispute. Such an act cuts against the Court's overarching goal for resolving litigation

[on its merits]." Pitts, 2019 WL 2448821, at *7. As in Pitts, so too in the case at hand, "[t]he gravity

of the [argument]" that Plaintiff seeks to exclude from trial "directs against its exclusion." Id.

69.     Court should "not be so quick to forfeit a party's right to a full and fair trial on the

merits of its case" through a sanction that would effectively eviscerate a party's whole theory of the

case. Sussman v. Salem, Saxon & Nielsen, P.A., 154 F.R.D. 294, 299 (M.D. Fla. 1994). Courts

"favor the disposition of cases on the merits" rather than through sanctions. Perez, 774 F.3d at 1332;

HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d 1191, 1205 (10th Cir. 2017).

Indeed, as the Eighth Circuit held in 2011, "a discovery sanction that results in a one-sided trial is a

severe one" and should be avoided where possible. Doe v. Young, 664 F.3d 727, 734 (8th Cir. 2011).

70.     As such, Plaintiff's recommended sanction that Defendant "be precluded from

advancing" his theory of incompetency at trial would be an unwarranted deprivation of Defendant's

due process rights and would "cut against" the Court's goal of resolving this matter on its merits.

WHEREFORE, it is prayed that the Court deny the relief sought in the Plaintiff's Motion for Sanctions and for other just and appropriate relief this Court sees fit.

Date:  October 14, 2018

Fisher, Tousey, Leas & Ball, P.A.
HARRIS L. BONNETTE, JR.
Florida Bar No. 846740
SCOTT ST. AMAND
Florida Bar No. 88843
501 Riverside Avenue, Suite 600
Jacksonville, Florida  32202
Telephone:  (904) 356-2600
Facsimile:   (904) 355-0233
hbonnette@fishertousey.com
ssa@fishertousey.com
mlm@fishertousey.com
naw@fishertousey.com

Trial Counsel for Defendant, Robert Schoenfeld

### CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2019, I electronically filed the foregoing with the Clerk of Court by using the PACER system, which will send a notice of electronic filing to the following counsel of record: (1) David A. Hubbert, Acting Assistant Attorney General, Tax Division, United States Department of Justice, 950 Pennsylvania Avenue, NW, Room 4603, Washington, D.C. 20530, and (2) Kari A.R. Powell and Robert S. Silverblatt, Trial Attorney, Tax Division, United States Department of Justice, P.O. Box 14198, Ben Franklin Station, Washington, D.C., 20044.

Harris L. Bonnette, Jr.